## 30441. TURNER v. THE STATE.

HILL, Justice.

Rudolph Turner was tried and found guilty by a jury of murder, armed robbery and kidnapping. He was sentenced to life imprisonment for armed robbery, and twenty years for kidnapping, all to run consecutively. He appeals from the denial of his motion for a new trial.

At trial Theodore Ross testified to a four man conspiracy among himself, the defendant, Willie Ross and Freddie King. His testimony fully implicated the defendant in all three crimes.

In August 1973, the four men planned to rob a grocery store in Moultrie, Georgia. On the night of August 23, 1973, they drove from Florida to Moultrie. They observed one of the store's owners Wandell Norman, close up and go to a house on the outskirts of town. The following night at about 10:00 the four returned to the house, assuming it to be Norman's house, and entered at gunpoint with stockings over their faces to wait for Norman to arrive with the money box. Once there, they learned that the house they had entered was not Norman's, but Mr. Stanford's. By coincidence, however, the Stanfords were keeping the Normans' baby, and therefore the Normans would return later that night for the baby. While they waited they terrorized the Stanford family and took several rolls of coins and some jewelry. Norman and his wife arrived about 2:30 a.m. Freddie King and Theodore Ross forced Norman and Brenda Cronic, who had been present in the house with the four robbers since 10:00, to accompany them to the house of the other owner of the store to get the money box. They took the money box after an exchange of gunfire. As they left without their hostages, the police were called. Lt. Merritt went to the Stanford house where the defendant and Willie Ross were still holding the remaining occupants hostage. The hostages heard 5 shots. They found Lt. Merritt fatally wounded. Later it was determined that he had been shot by Willie Ross. Willie Ross and the defendant fled.

The police found a red 1973 Chevelle with Florida license plates a short distance from the Stanford

residence. It contained Freddie King's driver's license. A Florida service station owner testified that a man, later identified as Willie Ross, had rented the car from him.

Within a few days Willie Ross, Freddie King and Theodore Ross were apprehended. Willie Ross and Freddie King were tried and convicted of murder, armed robbery and kidnapping. Theodore Ross pled guilty and was sentenced. Over a year later the defendant was arrested, was extradited from Florida, and was tried and convicted in Colquitt Superior Court of murder, armed robbery, and kidnapping.

1. The defendant concedes, as he must, that the testimony of conspirator Theodore Ross fully implicated him, but he contends that the testimony was uncorroborated and that corroboration is required where the single witness is a conspirator. Although the single witness argument is not entirely applicable to this case, we will proceed on that basis.

Code Ann. § 38-121 states the general rule that the testimony of a single witness is generally sufficient to establish a fact. But it provides for an exception "in any case of felony where the only witness is an accomplice." In a felony case where an accomplice testifies as a witness at trial "corroborating circumstances may dispense with another witness." Although the corroboration need not be sufficient to warrant a verdict of guilty, nor need every material particular be corroborated (*Mitchell v. State,* 202 Ga. 247 (3) (42 SE2d 767) (1947); *Whaley v. State,* 177 Ga. 757 (3) (171 SE 290) (1933)), insofar as the participation and identity of the accused is concerned, there must be independent corroborating evidence which tends to connect the accused with the crime. *West v. State,* 232 Ga. 861 (2) (209 SE2d 195) (1974).

Brenda Cronic identified the defendant at the extradition hearing in Florida as one of the four men who held her hostage on the night of the robbery and killing. She was taken to Jacksonville by the sheriff who told her that she was going to identify the defendant. There was no lineup; he was brought to the hearing in handcuffs. She testified that she knew it was he when she saw him. At trial she also identified the defendant. The defendant contends that her in-court identification was invalid

because it was based upon an impermissibly suggestive pre-trial identification.

In Neil v. Biggers, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972), the court held that where a victim identified the defendant in a "show-up," an in-court identification by the victim is admissible where, considering the totality of the circumstances, there is no substantial likelihood of misidentification. See also Simmons v. United States, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968). It should be kept in mind, however, that here the defendant was identified by his conspirator, and we are considering whether this victim's testimony may be used as corroboration.

In the case before us Brenda Cronic was with the defendant for over four hours under circumstances which would presumably raise her attention level. As evidence of this, she was able to describe in detail the clothing he wore on the night of the robbery and murder. Although he had a stocking mask at the time which prevented her from seeing his face clearly, she was able to observe his physical characteristics and movements. She testified: "I stared at him because he had this silver-plate gun, and I looked at him and King a lot, more than I did the others, because they were in the room a lot longer than the others, they were always around, and also, those two seemed to be the two most important, I mean he seemed to be trigger happy, I mean Turner, he acted like he wanted to shoot you."

In light of these factors we find that her in-court identification stemmed from the night in Moultrie and not from the confrontation at the extradition hearing. Therefore her in-court identification is not tainted by the earlier identification and can corroborate the testimony of the conspirator. See *Sherwin v. State,* 234 Ga. 592 (216 SE2d 810) (1975); *Griffin v. State,* 229 Ga. 165 (1) (190 SE2d 61) (1972).

Mr. Stanford also identified the defendant. He testified that at one point the defendant placed a knife against his ear and that someone urged, "let's just clip his ears." On cross examination the defendant attempted to undermine the reliability of Mr. Stanford's identification. The credibility of a witness is a matter left to the jury.

Code Ann. § 38-1805. If the jury chose to believe that Mr. Stanford was able to identify the defendant, then his identification could serve as further corroboration of the conspirator's testimony.

A fingerprint expert testified that he dusted the car for latent fingerprints and palm prints the day after the crime and that he compared, and found to be identical, one of the latent palm prints found on the car with an ink impression of the left palm of the defendant. The defendant contends that this testimony should not have been admitted and cannot serve as corroboration since the expert did not have enlargements to demonstrate at trial the points of comparison.

The expert was shown to be qualified in his field. He testified that the enlargements would demonstrate what he had done, but that his judgment was based on the comparison he had made out of court and the presence of the blow-ups would not alter his judgment. We find that this testimony was admissible and that it also served to corroborate the conspirator's testimony.

Citing *Anthony v. State,* 85 Ga. App. 119 (68 SE2d 150) (1951), the defendant urges that the evidence did not exclude the hypothesis that his palm print was impressed upon the car days or weeks prior to the crime. In *Anthony* the sole evidence against the accused was his fingerprint. Here the palm print was admissible against the defendant and corroborates the testimony of the conspirator.

The identification of the defendant by Brenda Cronic, the identification by Mr. Stanford, and the testimony as to palm print identification are sufficient to corroborate the conspirator's testimony, including defendant's identity and participation in the crimes. The court did not err in overruling the defendant's motion to strike Ross' testimony or in overruling his motion for new trial on the general grounds.

2. The defendant contends that imposition of consecutive sentences for the three offenses was error.

The jury returned guilty verdicts on all three charges. The court then instructed the jury as to sentencing, including instructions regarding consecutive and concurrent sentences. Although the jury did not follow those instructions in their entirety (it did not state

that the life sentence for armed robbery be served first) it did set a sentence of life in the penitentiary for the offense of armed robbery, and 20 years for the offense of kidnapping "to be served consecutively." The jury was unable to reach a verdict as to penalty for the murder. The court then set the penalty at life imprisonment for murder to run consecutively to both of the sentences for armed robbery and kidnapping.

Code Ann. § 27-2510 requires that where, at one term of court, a person is convicted of more than one offense, the sentences imposed by the jury shall be served concurrently unless the jury provides otherwise. *Wade v. State,* 231 Ga. 131 (200 SE2d 271) (1973); *Gandy v. State,* 232 Ga. 105 (205 SE2d 243) (1974). If the jury cannot agree on the punishment in a death case however, Code Ann. § 27-2534 requires that the trial judge impose sentence within the limits of the law with the proviso that he not be permitted to impose the death sentence in such a case. The punishment for murder is death or life in prison. The trial judge was authorized to impose the life sentence.

The defendant here argues that the trial judge in such a case does not have any discretion, but must impose a concurrent life sentence since the jury did not specify that the sentence should be served consecutively.

In *Brown v. Ricketts,* 233 Ga. 809 (4) (213 SE2d 672) (1975), we held that where a defendant was convicted of felony, as to which the jury set the sentence, and a misdemeanor, as to which the court set the sentence, the trial judge was authorized to provide that the sentence set by the court be served consecutively to the sentence set by the jury. We find that decision to be equally or more applicable to life sentences imposed by the court for murder upon the jury's failure to agree upon a death sentence. Here the jury was debating sentencing this defendant to death, and because they could not agree, the defendant urges that his life sentence imposed by the court must be served concurrently. We reject this argument and find that the court was authorized to set the sentence for murder at life imprisonment to run consecutively to the other two sentences.

*Judgment affirmed. All the Justices concur.*

SUBMITTED OCTOBER 20, 1975 — DECIDED JANUARY 7, 1976.

*Twitty & Twitty, Frank S. Twitty, Jr.,* for appellant.
*H. Lamar Cole, District Attorney, Arthur K. Bolton, Attorney General, Kirby G. Atkinson, Staff Assistant Attorney General,* for appellee.