## 62844. CAPE v. THE STATE.

QUILLIAN, Chief Judge.

Mitchell Cape, the defendant, appeals from his conviction for the offense of entering an automobile with intent to commit a theft. His single enumeration of error is that the trial court erred in denying his motion for a directed verdict of acquittal. *Held:*

Bill Booth, the owner of a gas service station, testified that on the night of September 13, 1979, he placed approximately $800 in cash and checks in a leather billfold and placed it in the glove compartment of the pickup truck he used at the service station and parked the locked truck in the carport of his home in Royston, Georgia. Sometime between 10:00 p.m. that night and 6:30 a.m. the next morning someone pried open the vent window on the truck and took the wallet, money, checks, and a .38 caliber pistol he also kept in the glove compartment of the truck. Mr. Booth also testified that the defendant had worked for him at the service station on various occasions — the last time was approximately one week before the theft and he knew that the pistol was kept in the glove compartment of the truck.

L. D., a fourteen-year-old juvenile, testified that the defendant visited his sister on the evening of September 13. At approximately 11:30 p.m. he and the defendant got into L. D.'s father's car and left to visit a friend, but "he wasn't up" and the defendant "wanted a pistol" and knew that the man he worked for kept one in the glove compartment of his pickup truck. They went to the home of his employer and the defendant used a crowbar to pry open the vent glass in the truck door. The defendant reached in and removed the pistol and "a brown package thing that snaps . . . Q. Like a large billfold? A. Yes, sir." The defendant showed him the pistol and told him "he'd been wanting, you know, the gun for about three years." Then they went to the Gold Mine Truck Stop and the defendant "throwed the package thing away and the checks and the holster of the gun." While they were eating in the truck stop a police officer, Kendall Dean, noticed them and L. D. attempted to hide his face. After they ate they went to another truck stop on I-85. He could not crank his father's car and they hired a taxi to take them to Greenville, South Carolina. There they purchased bus tickets for Columbia, South Carolina but the bus left before L. D. could get on board and he hired another taxi to return to Royston, Georgia. L. D. had no money when he and the defendant left his house but the defendant had given him $80 to $85 from the wallet that had been stolen.

The defendant's brief relies solely on Code Ann. § 38-121 (Code § 38-121) which specifies that the testimony of a single witness is

sufficient to establish a fact except "in any case of felony where the only witness is an accomplice . . ." The defendant is charged with a felony, and the juvenile, L. D., was an accomplice.

"In a felony case where an accomplice testifies as a witness at trial 'corroborating circumstances may dispense with another witness.' Although the corroboration need not be sufficient to warrant a verdict of guilty, nor need every material particular be corroborated [Cits.] insofar as the participation and identity of the accused is concerned, there must be independent corroborating evidence which tends to connect the accused with the crime." *Turner v. State,* 235 Ga. 826, 827 (221 SE2d 590). "[T]he quantum of testimony and its sufficiency to corroborate the testimony of an accomplice before a jury is a matter addressed entirely to the jury itself." *Brown v. State,* 163 Ga. 684, 691 (137 SE 31); *West v. State,* 232 Ga. 861, 865 (209 SE2d 195).

At the truck stop, a dog found the victim's discarded wallet which prompted a search. The search revealed the missing checks and the holster for the missing pistol. The defendant testified and admitted he visited L. D.'s sister on the evening of September 13. He stated "[a]nd the . . . boy [L. D.], he was watching TV or something, I guess. Anyway, we were back there listening to the tape player. About 11:30, he come back there and wanted to go get something to eat. So we left from there and I told him, I said, 'The only place that's open is Gold Mine Truck Stop' at that time of night. So he said, 'That's O.K.,' said, 'We'll go over there.' So we went over there to the Gold Mine." He also admitted that after they left there they went to another truck stop on I-85 and then by taxi to Greenville, South Carolina and then he went by bus to Columbia, South Carolina. The defendant was asked: "So the source of all the money that we're talking about from now on comes from [L. D.], is that correct? A. Yes, sir . . . Q. So, Mr. Cape, it is your testimony that you do recall everything that happened on the night of the 13th and the morning of the 14th; that all of the money that was used for the purposes of eating, going to South Carolina, going to Columbia were all from [L. D.] except for some $5.00 that you had which you used to purchase your ticket with, is that correct? A. Yes, sir."

A police officer testified that he had seen the defendant and L. D. at the Gold Mine Truck Stop "between one and two o'clock in the morning of the 14th [of September]." Whereas, the defendant testified that he and L. D. had gone there at 11:30 p.m. Another officer testified that he found two sets of footprints at the Booth residence which indicated that two people had broken into Booth's truck on the evening of September 13th. That same officer related that he asked the defendant about "the theft from the vehicle . . . Q.

What was his response to that? A. He said he didn't remember. Q. Did you ask him if he'd stolen the gun? A. Yes, I did. Q. And what was his response to that? A. 'Don't remember.' Q. Did he recall going to South Carolina? A. He recalled ending up being in South Carolina and borrowed $20.00 to come home on . . . Q. So, on the specifics of the crime itself, the entering the auto and taking the money and the weapon, he couldn't remember? A. No. Q. But he could vaguely remember other things that occurred that evening? A. Right."

In summary, the defendant's testimony corroborated that he had been in the company of L. D. for the entire evening of September 13 and the morning of September 14. L. D. admitted that he and the defendant committed the entry in the manner described by the owner and the police. Two sets of footprints were found at the scene. An officer saw L. D. and the defendant together between one and two a.m. at the truck stop — after the robbery had been committed and where the wallet, checks and pistol's holster were found. The defendant left Royston, the scene of the theft and removed himself to South Carolina which could have been considered as "flight" by the jury. Further, defendant's direct testimony shows a clear recollection of all events for the entire night, whereas his statement to the police after his arrest about the events for that same evening was that he did not remember.

We find this enumeration of error to be without merit. There was sufficient evidence of record to connect the defendant with the offense charged.

*Judgment affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 9, 1981.

*Floyd W. Keeble, Jr.,* for appellant.

*J. Cleve Miller, District Attorney, Francis J. George, Lindsay Tise, Assistant District Attorneys,* for appellee.