## 43350. BOUTWELL v. THE STATE.
(344 SE2d 222)

GREGORY, Justice.

Robert Douglas Boutwell was convicted of the murder of Todd Allen Wells and sentenced to life imprisonment.[1] At the time of the murder both men were inmates at the Jack T. Rutledge Correctional Institute in Columbus, Georgia.

---

[1] The crime was committed on May 9, 1983. The trial began June 14, 1983, and a verdict was returned June 17, 1983. The defendant was sentenced that same day. A motion for new trial was filed June 24, 1983. The transcript was certified by the court reporter on January 28, 1984. The motion for new trial was denied on January 24, 1986. The case was docketed in this court on April 1, 1986 and submitted on briefs to us on May 16, 1986.

The jury was authorized to find from the evidence offered at trial that the defendant, along with co-indictee Steven Terry Grover,[2] planned the victim's murder several days before the crime as punishment for information they believed the victim had provided prison officials concerning a home-made knife in the defendant's possession. James Daniell, another inmate, testified the defendant told him in detail of the plan to murder the victim. Daniell also testified that the defendant disliked the victim because the victim had made homosexual advances toward him.[3] The plan, as testified to by inmates Daniell and Grover, involved the strangulation of the victim by Grover in the dormitory shower while the defendant was in the prison courtyard establishing an alibi. Grover would then join the defendant in the prison yard and they would converse with the guards in order to establish an alibi for Grover. Grover testified the defendant planned to blame the murder "on a couple of blacks."[4] According to Grover's testimony he strangled the victim with his forearm, but because of recent shoulder surgery did not have the strength to kill him. When Grover did not appear in the courtyard as scheduled, the defendant returned to the dormitory shower. Finding the victim alive, the defendant choked him until he was no longer breathing, then ordered Grover to step on the victim's neck. While obtaining a pass to get a haircut, the defendant reported to a correctional officer that there was "something" in the shower which ought to be investigated. Moments later the victim was found dead. Medical evidence indicated he died of strangulation. Grover confessed the crime to GBI agents the following day. Grover testified that he, like the victim, had a prison reputation for being a "snitch," and that he participated in the defendant's plan because he was fearful of the defendant and of what could happen to prison informants. The defendant took the witness stand and denied participation in the crime, testifying that Grover had acted alone in murdering the victim.

1. The evidence, when viewed most favorably to the prosecution, would authorize a rational trier of fact to find the defendant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The defendant argues the State impermissibly placed his character in evidence when a witness was permitted to testify the defendant was a member of the prison Ku Klux Klan. Testimony indicated that part of the defendant's plan was to blame the murder on "a

---

[2] At trial Grover testified he intended to plead guilty to the murder of Todd Wells.

[3] Grover's testimony was that the defendant was angry because the victim had resisted the defendant's homosexual advances. Grover further testified that the defendant and James Daniell were homosexually involved.

[4] The defendant, victim and Grover are white.

couple of blacks." Additional inmate testimony demonstrated the defendant's racial biases. Steven Grover testified that the defendant was " 'two-faced' with blacks," pretending to be a friend to them while making racially derisive remarks about them to others. On cross-examination by the defendant a black inmate testified that the defendant had never exhibited "any type hatred" toward him and he had no knowledge of the defendant's alleged prejudices. To rebut this the State was permitted to offer the testimony of the prison superintendent that the defendant was a member of the Ku Klux Klan. This evidence was relevant to the State's contention that the defendant planned to blame the crime on black persons because of racial bias. "Evidence that is otherwise relevant and material to the issues in a criminal case does not become inadmissible simply because it incidentally puts a defendant's character or reputation into evidence." *Daniels v. State*, 252 Ga. 30, 32 (310 SE2d 904) (1984).

3. The defendant argues the trial court erred in charging the principles of flight as it was not possible to flee the confines of prison. It is undisputed that the defendant left the scene of the crime and obtained a pass to get a haircut. The defendant testified that he "came out of there pretty fast" after allegedly discovering the victim's body. The jury was charged that it might consider "whether to draw an inference of a consciousness of guilt" from "flight or similar acts." We find this to be a proper charge under the circumstances of the case. The charge was directed to the defendant's flight from the scene of the crime. The defendant's failure to "remain at the *scene of the offense* is circumstantial evidence of his guilt and of his knowledge of his guilt." *Waters v. State*, 248 Ga. 355, 366 (283 SE2d 238) (1981). (Emphasis supplied.) Thus the charge on flight was proper where the defendant left the scene of the crime even though he may have been unable to leave the confines of prison.

4. The defendant maintains he was denied the right to thoroughly cross-examine James Hylton regarding the victim's alleged homosexuality. We do not agree. Over the State's objection the defendant was permitted to inquire whether the witness had knowledge that the victim had made homosexual advances toward the witness "or anyone else." It is clear from the defendant's colloquy with the trial court following the State's objection that this was the only question the defendant sought to ask with regard to this issue.

5. In summarizing the evidence in closing argument the district attorney made reference to the prison superintendent's testimony that the defendant was a member of the Ku Klux Klan. The defendant objected that this statement placed his character in evidence; the trial court instructed the district attorney to "move on" with his argument. As we have held in Division 2, supra, that the reference to defendant's membership in this organization did not impermissibly

place his character in evidence, we find no error.

In closing argument the district attorney referred to the defendant's testimony that he hoped "to get out [of prison] this year." The prosecutor then asked the jury, "Doesn't that put a shudder up and down your spine?" The defendant did not object to this statement at trial. We hold that he may not make his objection for the first time on appeal. *Spivey v. State*, 253 Ga. 187, 191 (319 SE2d 420) (1984).[5]

6. Immediately after the victim's body was discovered all inmates residing in the same dormitory as the victim were placed in isolation. A correctional officer gave each inmate a pad of paper and pencil and suggested that if they had information about the incident they wished to divulge, they could do so. The officer informed the inmates that this was a purely voluntary procedure. The officer testified that no one of the inmates was a suspect in the case at this time, and no *Miranda* warnings were given. The defendant wrote out a statement that he had come into the dormitory from the courtyard, seen the victim's body and reported the incident to a correctional officer. The defendant stated he then left to get a haircut. Later that day a GBI agent contacted the defendant as a witness in the case. No *Miranda* warnings were given at this time. During this interview the defendant made essentially the same statement as before, but added that there was "a bounty" on the victim because the victim had "snitched" on other inmates attempting an escape from prison in Reidsville, Georgia. The interviewing GBI agent testified that the defendant was not a suspect at this time; rather, the agent testified that Steven Grover was the only suspect in the case at the time of the defendant's interview. The trial court admitted both these statements at trial over the defendant's objection that they were the product of custodial interrogation in violation of *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). The State concedes that these were custodial statements, see *Mathis v. United States*, 391 U. S. 1 (88 SC 1503, 20 LE2d 381) (1968), but maintains the statements were not admitted in violation of *Miranda*. We agree.

This crime was committed behind prison walls. The investigation necessarily took place behind those prison walls and involved a search for possible witnesses among the inmates, all of whom were in custody but none of whom were suspects in the crime being investigated, with the exception of Grover. There was a general investigation underway inside the prison into an unsolved crime, but the focus of the investigation had not yet become fixed upon Boutwell. *Escobedo v. Illinois*, 378 U. S. 478 (84 SC 1758, 12 LE2d 977) (1964). The custodial inter-

---

[5] We noted in *Spivey* that while this is "ordinarily" the rule, in death penalty cases it is the duty of this court to review the entire record to determine whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor.

rogation which requires investigating officers to advise the person interrogated of constitutional rights to counsel and against self-incrimination is that interrogation which occurs after the investigation has focused on an accused. It is when one is in custody and it is suspected he committed the crime under investigation that he must be informed of his rights, not simply because he happens to be in custody and may have information about a crime. *Miranda v. Arizona*, 384 U. S., supra at 444, n. 4; *Mathis v. United States*, 391 U. S., supra. This is a reasonable rule because investigating officers have little motivation to engage in tactics held reprehensible in *Escobedo* and *Miranda* until suspicion focuses upon the one interrogated and, as a corollary, one who is but a witness to and not a participant in crime has little need of the constitutional protections mentioned above.

*Judgment affirmed. All the Justices concur, except Smith, J., who dissents.*

DECIDED JUNE 10, 1986.

*H. Haywood Turner III*, for appellant.
*William J. Smith, District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Staff Assistant Attorney General*, for appellee.

