**Gary Marcus KAY, Plaintiff,**

v.

**FIRST CONTINENTAL TRADING, INC., et al., Defendants.**

**No. 95 C 3089.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 26, 1997.

Alan J. Mandel and George S. Robot of Alan J. Mandel & Associates, Chicago, IL, for Plaintiff.

Gerald Maatman and Ashley Hall of Baker & McKenzie, Chicago, IL, Patricia Morton and Vicky Papoutsis of McKenna Storer Rowe White & Farrug, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

In conjunction with the parties' joint submission of a proposed Final Pretrial Order that this Court then entered on September 2, 1997 (nunc pro tunc August 5, 1997), each of them has advanced a number of motions in limine, to all of which the respective targets have now responded. This is the third—and, it is expected, the last—of a series of memorandum opinions and orders issued to deal with those motions. This one deals with the

motion of James E. Van Ella & Associates, Inc. ("Van Ella") to exclude the testimony and report of Donald Berlin ("Berlin")(Dkt.95) and the combined motions of Van Ella (Dkt.103) and First Continental Trading, Inc. ("First Continental")(part of Dkt. 104) to exclude the testimony of Steven Moffitt ("Moffitt"). Both Berlin and Moffitt are claimed "experts" proffered by plaintiff Gary Kay ("Kay").

As for Berlin, it is entirely understandable that Van Ella but not First Continental has objected to his proposed opinion testimony, for that testimony is offered only to attack the adequacy of Van Ella's investigation—the investigation that led to Van Ella's erroneous report to First Continental regarding what proved to be a totally nonexistent criminal record in Kay's background. For the reasons explained in the ensuing discussion, Van Ella's motion in limine as to Berlin's testimony is granted in part and denied in part.[1]

■ To begin with, it is an oversimplification (and an inaccurate one) for Van Ella to suggest that the methodology prescribed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) necessarily applies across the board to all opinion testimony potentially admissible under Fed.R.Evid. ("Rule") 702—that is, to the possessors of "technical" or of "other specialized knowledge" as well as to witnesses having "scientific" knowledge. Both *Daubert* itself (*id.* at 589–90 & n. 8, 113 S.Ct. at 2795 & n. 8) and common sense teach that not all of the considerations that are identified in *Daubert* for trial judges' exercise of their gatekeeping function automatically extend beyond the realm of "science" (a term that itself has considerable breadth—see, e.g., *Tyus v. Urban Search Management*, 102 F.3d 256, 263 (7th Cir. 1996)).

■ But this Court still has a comparable (though not identical) gatekeeping function with respect to the other categories of "expert" (that is, opinion) testimony that are embraced within Rule 702. And the application of the relevant criteria to Berlin's proposed testimony certainly permits him to state what *he* did by way of investigation and, based on his own experience, to state his opinion that Van Ella could have done the same. It is also appropriate for Berlin, if this indeed constitutes his opinion derived from his own expedience, that Van Ella could not effectively have conducted such an investigation for the low price that it charged to First Continental.

■ On the other hand, Kay's effort to elevate Berlin to expert status such as would enable him to offer opinion testimony as to industry standards, or otherwise to report on random conversations that he has had with colleagues, for example, must be rejected. Rule 703, which enables experts' opinions to be based upon facts or data that need not themselves be admissible in evidence, creates an obvious potential for the use of such opinions as a vehicle for creating a "back door" hearsay exception.[2] And that danger is particularly present with opinions of the type that Berlin has expressed in his report and on which he was examined in his deposition. In that respect a balancing approach, like that contained in Rule 403 for dealing with *admissible* evidence, may also serve as a useful vehicle for the exercise of the court's gatekeeping role as it would apply to limiting the injection of *inadmissible* evidence into a trial under the auspices of Rule 703.

Unfortunately both sides to this dispute have approached it pretty much on an all-or-none basis. This Court will not do the liti-

1. As to both Berlin and Moffitt, their respective reports tendered in compliance with Fed.R.Civ.P. 26(a)(2)(B) are not admissible or inadmissible into evidence independently of their proposed testimony as described in those reports. Hence this opinion's treatment of the witnesses' opinion testimony applies with equal force to the comparable content of their respective reports.

2. This Court has been a member of the Advisory Committee on the Rules of Evidence of the Judi-

cial Conference of the United States ever since Chief Justice Rehnquist reconstituted that Advisory Committee and appointed its new membership in 1993, after a lapse of some 20 years without such a committee in being. What has just been said in the text about Rule 703 is a subject that has concerned, and has occupied the deliberations of, the Advisory Committee—and that, in act, is an express part of the agenda for its upcoming October 1997 meeting.

gants' work for them by attempting to parse each aspect of Berlin's report or his deposition testimony. What has been said here is as far as this ruling in limine can and will go. If and to the Extent that Berlin seeks to express opinions at the time of trial that go beyond the limited areas that have been mentioned as permissible earlier in this opinion, he does so at the peril of suffering exclusionary rulings at trial.

By contrast with Kay's disclaimer of a "scientific" label for Berlin's testimony, in part Kay does proffer the testimony of statistician Moffitt under the "scientific" rubric for Rule 702 purposes—Moffitt has a doctorate in statistics, and he also has experiential background in the trading industry. As such, Moffitt's proposed testimony qua statistician is to be evaluated under the analysis prescribed by *Daubert.* But Kay urges that the other aspects of his testimony fall outside of the "scientific" context and fit instead into the Rule 702 categories of "technical" or "other specialized knowledge."

It is of course obvious that there is no bright line differentiation among the Rule 702 categories. But however the proffered Moffitt opinions may be classified, plainly they are more than merely suspect in material respects.

■ For one thing, after Moffitt has applied the principles of regression analysis—something that is certainly permissible for an expert statistician—to the earnings of traders generally, and he has then proceeded to prepare a statistical model of the earnings of First Continental traders, he proceeds to misuse that model by leaping into the realm of the totally speculative (Kay R. Mem. 3):

> Finally, he opined that Mr. Kay should be considered in the 55th to 85th percentile of traders, based upon his backgammon

skills, which Dr. Moffitt believed made him a higher than average candidate as a trader.

That aspect of Moffitt's opinion is not at all grounded in the type of foundation that can suffice to support its admissibility. Moreover, it must be recognized that a witness' justifiable patina, which may be conferred by his or her status as an expert in some acknowledged field of expertise, poses a special danger that the trier of fact may extend a comparable credence to the witness' opinions that fall outside of that area of expertise. That risk is especially high where, in the case of complex or extensive formulas, tables or other mathematical presentations by a statistician, the corollary ungrounded opinions are given a deceptive and unjustified appearance of precision. That type of hazard creates a prime prospect for an adverse ruling under Rule 403 balancing.[3]

■ Next, Moffitt's opinion and his calculations based on the premise that the Van Ella and First Continental conduct caused Kay to lose the benefit of a 5 to 7.5 year career as a trader is likewise tendered without proper support. In that respect Kay R. Mem. 7 advances this bogus argument:

> In the first instance, First Continental has waived this argument when its own expert issued a report which calculated an earnings stream of 17 years.

In fact First Continental's expert witness Robert MacLaverty plainly made his own calculations on a defensive worst-case scenario that projected Kay's continued employment until his presumed retirement at age 65: At the same time and on the very same page, MacLaverty's report expressly made the point that:

3. In part Kay points to the fact that First Continental's decision to hire him in the first place was based on a similar predilection in favor of his gaming skill on the part of First Continental's own people. But even apart from the universal acceptance of the fact that there is no necessary correlation (or even one that is demonstrably valid statistically) between backgammon (or other game-playing) skills and an individual's success as a trader, it is unquestionably true that anyone who might perhaps have been selected because of such outside skills but does not then

satisfy that potential in the crucible of his or her post-hiring performance will not be kept on. First Continental was perfectly free to hire Kay because of a belief or predilection (even an unfounded one) as to his being a promising prospect, and then to fire him if he didn't pan out. Thus Moffitt's 55th to 85th percentile figures are really plucked out of thin air, and the Van Ella–First Continental motions to bar Moffitt's testimony would have to be granted to that extent in all events.

Based upon First Continental Trading, Inc. annual employment data the average tenure of all traders employed at the firm between 1989 and 1995 is 2.16 years, considerably shorter than my 17 year assumption.

But most importantly, the MacLaverty calculations over such an extended period have expressly taken into account (as Moffitt's calculations have not) the conditional probabilities (or improbabilities) of Kay's continued future employment. Thus the farther out a projection may go, the deeper the discount that is required—something that takes care of the concept of a statistically valid opinion as to assertedly lost future earnings. By contrast, the only discount that Moffitt included within *his* calculations is one that reduces to present value at a T-bill rate what he has treated as a risk-free period during which Kay would have derived the calculated future earnings.

What Moffitt has done is to present his own speculative numbers without having tempered them in any way to account for their "iffy" nature. Those deficiencies involve a fundamental flaw that causes the overall Moffitt opinion to be the Rule 702 equivalent of what in early computer vocabulary bore the label "GIGO" ("garbage in, garbage out"). Neither Moffitt's report nor his deposition testimony has explained (nor has Kay's memorandum in opposition to the motions in limine explained) why his model is totally lacking in a critical validation element in every such calculation: accountability for the risks involved. That is a subject to which our Court of Appeals' Chief Judge Richard Posner has paid particular and repeated need (see, e.g., *Price v. Marshall Erdman & Assocs., Inc.*, 966 F.2d 320, 326–27 (7th Cir.1992)). It is perhaps surprising, but it is nonetheless true, that someone with Moffitt's stated credentials has pursued a fatally defective methodology in generating his opinion.[4]

What has been said here really taints Moffitt's opinion in its entirety. Moffitt has not even made a pass at taking into account the risks necessarily inherent in a projection of assertedly lost future earnings, instead treating Kay as though he had been wrongfully deprived of a firm and binding term contract of between 5 and 7.5 years.[5] And that gaping omission is not simply a matter that affects the weight of the proffered evidence as an issue to be decided by the factfinder—a treatment that would leave it to the factfinder to value or devalue the opinion without being given any criteria for doing so.

Instead the opinion is truly a caricature of a legitimate damages calculation, rendered doubly problematic (1) because a portion of the calculations does involve the legitimate practice of the statistician's art, thereby potentially causing the more significant and illegitimate portion to be impermissibly persuasive to the untrained reader or listener, and (2) because the deceptive appearance of precision that is created by the complex calculations enhances the risk that lay factfinders may swallow the bogus conclusions that Moffitt espouses. Though the art or science (take your choice) of statistics has evolved considerably during the intervening three-quarters of a century, what Kay and Moffitt have tendered remains evocative of Mark Twain's sardonic comment in his 1924 *Autobiography:*

> There are three kinds of lies—lies, damned lies and statistics.

### Conclusion

For the reasons that have been stated here, the motion in limine as to Berlin is granted in part and denied in part, while the motions in limine as to Moffitt are granted. As to the former, this Court has made no

---

4. In that respect, the discussion in *Price* is not at all exhaustive as to the types of risks that must be taken into account if a methodologically sound calculation is to be provided.

5. That flaw is exacerbated by Moffitt's further omission of any consideration of what First Continental and Van Ella term mitigation: what Kay earned or should have been able to earn from other employment during the period of the claimed lost opportunity to work for First Continental (see, e.g., *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1143–44 (7th Cir.1985), another of Chief Judge Posner's opinions in one of his own areas of expertise—economic analysis)

effort to determine how the aspects of the proposed opinion testimony by Berlin that remain admissible will play out at trial—that is for the litigants to piece out.

With all of the motions in limine now having been resolved, it is time to set the case for trial. For that purpose the counsel for all parties are ordered to appear in court at 1:15 p.m. October 1, 1997—or this Court is alternatively willing to handle the matter via a telephonic conference call at that time, to be arranged for and placed by counsel. If counsel desire to follow the latter procedure, they should so advise this Court's minute clerk at least one day before the designated October 1 date.