S03A0860. ROEBUCK v. THE STATE.
(586 SE2d 651)

CARLEY, Justice.

In 1985, Charles Boyd was fatally stabbed in an altercation with three passengers in his car. Anthony Hill and Willie Terrell were convicted of murder, and the convictions and life sentences were affirmed on appeal. *Terrell v. State*, 258 Ga. 722 (373 SE2d 751)

(1988). Attempts to identify the third participant in the homicide were unsuccessful until 1994, when a previously unmatched print lifted from the victim's automobile was shown to be that of "Demetrius Jones," an alias that the State contends was used by Appellant Gregory Roebuck. Thereafter, Hill gave a statement, in which he exonerated Terrell and implicated Appellant and Adrian Smith as the other two passengers in Mr. Boyd's car. Eventually, the trial court granted an extraordinary motion for new trial filed by Terrell, and the State dropped the murder charge against him. Smith was never charged with the crime because he died in an unrelated shooting. In 1999, Appellant was indicted for killing Mr. Boyd. A jury found him guilty of malice murder, and the trial court imposed a sentence of life imprisonment. After the denial of a motion for new trial, Appellant brings this appeal.[1]

1. Hill testified as a witness for the prosecution. To authorize Appellant's conviction, the State was required to produce at least slight evidence to corroborate Hill's identification of him as one of the three participants in the crime. *Chergi v. State*, 234 Ga. App. 548, 550 (4) (507 SE2d 795) (1998). Appellant urges that it failed to do so.

An expert witness testified that he matched a print lifted from the victim's vehicle with the print of an individual identified as Gregory Roebuck. According to Appellant, the latter print was never shown to be his. However, " '[c]oncordance of name alone is some evidence of identity. Identity of name presumptively imports identity of person, in the absence of any evidence to the contrary.' [Cit.]" *Gibson v. State*, 243 Ga. App. 610, 612 (2) (b) (533 SE2d 783) (2000). The defense never disputed that Appellant was the individual whose print was matched by the expert, and thereby impliedly conceded that he was that person. See *Lewis v. State*, 234 Ga. App. 873, 877 (4) (508 SE2d 218) (1998). He relies upon the fact that, at one point, the witness indicated that the name of the individual "appears to be Gregory Roebuck, R-O-E – I think it's T-U-C-K or H. I can't read my writing there." However, this small equivocation is immaterial, since the witness on every other occasion identified the matching print as belonging to a person named Roebuck. Resolving evidentiary conflicts and inconsistencies is the province of the fact-finder. *Hampton v. State*, 272 Ga. 284, 285 (1) (527 SE2d 872) (2000). Moreover, the

---

[1] The crime was committed on October 10, 1985. The grand jury indicted Appellant on April 16, 1999, and he was arrested in May of 1999. The jury returned the guilty verdict on July 5, 2000, and the trial court entered judgment of conviction and imposed the life sentence on August 4, 2000. Appellant filed a motion for new trial on August 8, 2000, which the trial court denied on September 20, 2002. On December 2, 2002, the trial court granted Appellant an out-of-time appeal, and he filed a notice of appeal the following day. The case was docketed in this Court on February 28, 2003. The appeal was orally argued on May 20, 2003.

print card was admitted into evidence without objection, and the jury could determine for itself whether it was labeled with the name "Gregory Roebuck." See *California Ins. Co. v. Blumburg*, 101 Ga. App. 587, 591 (2) (115 SE2d 266) (1960) (proper reading of an obscurely written word is for the jury). Under the circumstances, the uncontested testimony of the expert shows that he matched a print lifted from Mr. Boyd's automobile to Appellant's print. See *Hardrick v. State*, 96 Ga. App. 670, 672 (4) (101 SE2d 99) (1957).

Appellant contends that the print card is hearsay, because it was never formally tendered and admitted as a business record. However, the testimony of the expert is what connects Appellant to the crime, and admissibility of that inculpatory testimony does not depend upon the admission of the print used by the witness to compare with the one taken at the murder scene. *McCoy v. State*, 237 Ga. 118, 120 (227 SE2d 18) (1976). See also *Turner v. State*, 235 Ga. 826, 829 (1) (221 SE2d 590) (1976); *W.B.S. v. State*, 163 Ga. App. 471, 472 (1) (294 SE2d 705) (1982). Even if the failure to proffer the print card as a business record renders it hearsay, the rule in this state is that "[a]n expert . . . may base his opinion on hearsay. The presence of hearsay does not mandate the exclusion of the testimony; rather, the weight given the testimony is a question for the jury. [Cit.]" *Cheek v. Wainwright*, 246 Ga. 171, 174 (3) (269 SE2d 443) (1980). See also *King v. Browning*, 246 Ga. 46, 47-48 (1) (268 SE2d 653) (1980); *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587, 592-593 (4) (452 SE2d 159) (1994); *Jones v. Ray*, 159 Ga. App. 734, 736 (4) (285 SE2d 42) (1981). Any decision, such as *Redwing Carriers v. Knight*, 143 Ga. App. 668, 672 (6) (239 SE2d 686) (1977), which holds that an expert's reliance upon hearsay affects the admissibility, rather than the weight of his or her opinion, is erroneous and is hereby overruled.

Although it was never admitted as a business record, the print card was relevant as the basis for the expert's conclusion that Appellant's print matched that taken from the victim's vehicle.

> An expert may base his opinion on hearsay and may be allowed to testify as to the basis for his findings. [Cits.] When an expert's testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion. The evidence should go to the jury for whatever it's worth. [Cits.]

*King v. Browning*, supra at 47-48. "[W]here an expert personally observes data collected by another, his opinion is not objectionable merely because it is based, in part, on the other's findings. [Cits.]"

*Millar Elevator Service Co. v. O'Shields*, 222 Ga. App. 456, 457 (1) (475 SE2d 188) (1996). Having heard the expert's unrebutted testimony about the matching prints and having considered the basis from which the witness formed that opinion, the jury was authorized to find that Appellant was one of the three occupants of the car. See *Knight v. State*, 185 Ga App. 619, 621 (2) (365 SE2d 484) (1988). Accordingly, that fingerprint evidence "served to corroborate the conspirator's testimony." *Turner v. State*, supra at 829 (1).

According to the special concurrence, the expert's testimony, standing alone, was not sufficient to connect Appellant to the crime. However, in *McCoy v. State*, supra at 120, we held that an expert was authorized to testify that fingerprints matched, even though the exemplar print of the accused was never introduced. This case is not materially different. Here, the print that the expert used in the comparison was otherwise shown to be that of Appellant, because it bore his name and he did not deny that it was his. "Concordance of name alone is some evidence of identity." OCGA § 24-4-40 (a). If the opinion testimony, standing alone, was relevant and probative in *McCoy*, then it is likewise independently relevant and probative in this case. See also *Turner v. State*, supra at 829 (1); *W.B.S. v. State*, supra at 472 (1). *McCoy* differs only in that here the card bearing Appellant's name was actually introduced into evidence. However, if introduction of the print card was not necessary to the admission of the expert's opinion testimony in *McCoy*, then certainly its introduction without objection in this case does not negate the independent relevancy of that testimony.

The special concurrence further characterizes the print card as inadmissible hearsay. However, even assuming that it is hearsay, it still can constitute the basis for an expert's opinion in this state. *Cheek v. Wainwright*, supra at 171, 174 (3). Whether or not it is admissible hearsay is not before us, because Appellant never objected to its introduction. See *King v. Browning*, supra at 47 (1). Compare *Loper v. Drury*, 211 Ga. App. 478, 481 (1) (b) (440 SE2d 32) (1993).

Under the special concurrence's analysis, no expert can ever give a probative opinion that two fingerprints match unless and until the accused's exemplar print is formally introduced as a business record or is admitted under some other exception to the hearsay rule. That is not the law of Georgia. An expert can give an opinion based upon a comparison between a print taken from the scene of the crime and one which, even though never introduced into evidence, is otherwise identified as that of the defendant. *McCoy v. State*, supra at 120. Here, the expert testified that a fingerprint lifted from the victim's car matched a print which bore Appellant's name. Appellant did not dispute that the exemplar print was his, and did not raise a hearsay objection to admission of the evidence upon which the expert's opin-

ion was based. Under these circumstances, there is no reason to reconsider Georgia's long-standing rule that inadmissible hearsay lacks probative value even though the opposing party does not object to its introduction. That rule does not apply under the facts of this case, because the expert's opinion is independently probative notwithstanding any reliance on unobjected to hearsay.

When all of the evidence, including the corroborative fingerprint evidence, is construed most strongly in support of the verdict, it is sufficient to authorize a rational trier of fact to find proof of Appellant's guilt of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant also urges that the State failed to show that the fingerprints identified as those of "Demetrius Jones" were his. Those prints are separate and distinct from the ones identified as Gregory Roebuck's and discussed in Division 1. Therefore, error, if any, in the prosecution's failure to show that Appellant used an alias and that the fingerprints of "Demetrius Jones" were his would be harmless. Standing alone, the expert's testimony that the fingerprints identified as belonging to Gregory Roebuck matched those taken from the murder scene was sufficient corroboration. *McCoy v. State*, supra; *Turner v. State*, supra.

3. Appellant invoked the reciprocal discovery provisions of OCGA § 17-16-1 et seq. He contends that the fingerprint evidence was inadmissible because, in violation of those provisions, the State failed to disclose it to the defense in a timely fashion.

While none of the prints was newly discovered, their identification as Appellant's apparently was. Before admitting the fingerprint evidence, the trial court allowed the defense an opportunity to review it and to interview the expert who would testify to the match. The circumstances do not demand a finding that the prosecution acted in bad faith or that the defense was prejudiced by the lack of earlier disclosure. Thus, admission of the fingerprint evidence was not error. *Ware v. State*, 273 Ga. 16, 18 (4) (537 SE2d 657) (2000).

4. Appellant enumerates as error the denial of his motion to dismiss based on prosecutorial delay. He never filed a motion for speedy trial. He was indicted and arrested in 1999, and tried only slightly more than a year later. Under the circumstances, there was no violation of his constitutional right to a speedy trial. See *Harris v. Hopper*, 236 Ga. 389 (224 SE2d 1) (1976). Compare *State v. Redding*, 274 Ga. 831 (561 SE2d 79) (2002) (67-month delay between arrest and trial); *State v. Johnson*, 274 Ga. 511 (555 SE2d 710) (2001) (delay of 7 years between arrest and trial).

The remaining question is whether the delay between 1994, when Appellant was first identified as the possible third occupant of Mr. Boyd's car, and 1999, when he was indicted and arrested, violates

due process. *Wooten v. State*, 262 Ga. 876, 878 (2) (426 SE2d 852) (1993). "Where the delay occurs in the investigative stage before either arrest or indictment, due process, not sixth amendment, standards apply. [Cit.]" *Haisman v. State*, 242 Ga. 896, 898 (2) (252 SE2d 397) (1979).

A due process violation requires a finding "1) that the delay caused actual prejudice to the defense, *and* 2) that the delay was the product of deliberate action by the prosecution designed to gain a tactical advantage. [Cits.]" (Emphasis in original.) *Wooten v. State*, supra at 878 (2). After conducting a hearing, the trial court concluded that Appellant failed to prove either element. He contends that the evidence demands a finding of actual prejudice because some witnesses are now inaccessible and certain evidence has been lost. However, "any prejudice which results merely from the passage of time cannot create the requisite prejudice." *Wooten v. State*, supra at 880 (3). As for the second prong, Appellant showed, at most, that the delay between 1994 and 1999 was the result of the State's decision to conduct further investigation and to obtain additional evidence. Delay occasioned by the ongoing investigation of a case does not rise to the level of a due process violation. *Andrews v. State*, 175 Ga. App. 22, 26 (332 SE2d 299) (1985). See also *Wooten v. State*, supra at 880 (3). Therefore, the trial court correctly denied the motion to dismiss.

5. In the course of explaining his relationship with Appellant, Hill testified that he met him at the Augusta Youth Detention Center. To corroborate this testimony and to rebut Appellant's denial that he knew Hill, the State introduced evidence showing that the two were incarcerated together at the facility. Appellant urges that Hill's testimony and the corroborating evidence were inadmissible because they reflected on his character.

A passing reference to a defendant's record does not put his character into issue. *Isaac v. State*, 269 Ga. 875, 877 (5) (505 SE2d 480) (1998). Here, the focus was not on Appellant's character, but on his relationship with Hill. The evidence was relevant to the credibility of Hill's claim that, despite Appellant's denial, the two were acquainted before the murder and that he was, therefore, confident of his identification of Appellant as one of the participants in the crime. "Evidence which is relevant and responsive but which minimally places the character of the defendant into issue, is nevertheless admissible where the relevance of the testimony outweighs any prejudice it may cause. [Cits.]" *Bennett v. State*, 177 Ga. App. 643, 644 (2) (340 SE2d 273) (1986). Relevant evidence is not rendered inadmissible because it incidentally puts the defendant's character into issue. *Ware v. State*, supra at 17 (2).

6. Evidence of Appellant's alleged use of aliases did not place his character into evidence. *McCord v. State*, 268 Ga. 842, 843 (2) (493

SE2d 129) (1997).

7. Appellant contends that, on numerous occasions during closing argument, counsel for the State engaged in prosecutorial misconduct. The record reveals that the defense did not object at any time. "[T]he 'contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct.' [Cit.]" *Ledford v. State*, 264 Ga. 60, 67 (18) (a) (439 SE2d 917) (1994). Thus, this enumeration does not present any issue for review.

8. The trial court sustained an objection to a portion of the prosecutor's closing argument, and defense counsel did not request any further relief. Contrary to Appellant's contention, the trial court was not required, on its own motion, to rebuke counsel for the State or to give curative instructions. *Palmer v. State*, 271 Ga. 234, 241 (12) (517 SE2d 502) (1999); *Kyler v. State*, 270 Ga. 81, 82 (2) (508 SE2d 152) (1998).

9. At the hearing on the motion for new trial, the trial court refused to consider testimony from a juror who claimed that her vote for the guilty verdict resulted from coercive pressure applied by other members of the jury. The proffered testimony was not within any exception to the general rule that jurors are incompetent to impeach their own verdict. OCGA § 17-9-41; *Oliver v. State*, 265 Ga. 653, 654 (3) (461 SE2d 222) (1995). The purpose of OCGA § 17-9-41 "is plainly to prohibit after-the-fact picking at the negotiating positions of the jurors and of their attempts to persuade one another." *Aguilar v. State*, 240 Ga. 830, 832 (1) (242 SE2d 620) (1978). Therefore, the trial court correctly refused to consider the irrelevant testimony. Compare *Sears v. State*, 268 Ga. 759, 766 (17) (493 SE2d 180) (1997) (permissible for counsel to contact jurors regarding possible juror misconduct); *Watkins v. State*, 237 Ga. 678, 685 (229 SE2d 465) (1976) (juror misconduct consisting of intentional gathering of extra judicial evidence prejudicial to the defense).

10. Appellant contends that his trial counsel was ineffective. To prevail on that claim, he must show that the attorney's performance was deficient and that there is a reasonable likelihood that, but for his errors, the jury would have returned a different verdict. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Of the two elements, the trial court concluded that Appellant failed to prove that his lawyer's performance was deficient. To satisfy the deficiency prong, a defendant must rebut "the 'strong presumption' that counsel's performance fell within a 'wide range of reasonable professional conduct,' and that counsel's decisions were 'made in the exercise of reasonable professional judgment.' [Cit.]" *Barner v. State*, 276 Ga. 292, 294 (4) (578 SE2d 121) (2003). "On appellate review, ' "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the

legal principles to the facts. [Cit.]" (Cit.)' [Cit.]" *Wright v. State*, 276 Ga. 419, 421 (5) (577 SE2d 782) (2003).

When considering defense counsel's performance, there is a critical distinction between inadequate preparation and unwise tactical and strategic decisions. *Jackson v. State*, 276 Ga. 94, 96 (6) (575 SE2d 447) (2003). According to the trial court, Appellant's attorney was thoroughly prepared, and that finding is supported by the record. Appellant urges, however, that the failure to object to the admission of certain evidence and to portions of the prosecutor's argument was deficient. In such matters of trial strategy and tactics, " 'effectiveness is not judged by hindsight (or) result.' [Cit.]" *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998). Thus, the trial court correctly noted that, in assessing Appellant's contention that the failure to object to the evidence and argument was unreasonable, it was not authorized to substitute its judgment for that of trial counsel. *Hudson v. State*, 250 Ga. 479, 486 (8) (299 SE2d 531) (1983). "[A] reviewing court 'must be "highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." (Cit.)' [Cit.]" *Hamilton v. State*, 274 Ga. 582, 589 (13) (555 SE2d 701) (2001). "[T]rial counsel's strategy was not unreasonable merely because appellate counsel would have pursued a different strategy. [Cits.]" *Anderson v. State*, 274 Ga. 871, 874 (4) (560 SE2d 659) (2002). " 'We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . [Cit.]' " *Jefferson v. Zant*, 263 Ga. 316, 318 (3) (a) (431 SE2d 110) (1993).

> "From the evidence presented at the hearing, the trial court was authorized to find that the failure to do what [A]ppellant now claims should have been done was due to counsel's trial strategy, and not a result of inadequate preparation or presentation." [Cit.]

*Roberts v. State*, 267 Ga. 669, 672 (5) (482 SE2d 245) (1997). Applying the applicable legal principles to those findings, we affirm the trial court's conclusion that Appellant failed to rebut, by clear and convincing evidence, the strong presumption that he received effective assistance of trial counsel. *Adams v. State*, 274 Ga. 854, 857 (5) (561 SE2d 101) (2002).

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., who concurs specially and Sears, P. J., who dissents.*

FLETCHER, Chief Justice, concurring specially.

The majority opinion affirms Roebuck's conviction by concluding that an expert's opinion corroborates an accomplice's testimony that

Roebuck committed the crime. In fact, however, the only corroborating evidence is the inadmissible hearsay upon which the expert relied. But because Roebuck did not object to the admission of the hearsay, and because we should overrule our prior cases holding that hearsay has no probative value even when admitted without objection, I would hold that the hearsay admitted in this case can serve as the necessary corroborating evidence. Therefore, I concur in the judgment.

1. There must be at least some evidence to corroborate the accomplice's testimony.[2] The State's expert testified that a palm print taken from a vehicle at the scene of the crime matched a palm print on a 1985 print card labeled "Gregory Roebuck." The majority opinion relies on this expert testimony as its sole corroborating evidence. But the expert testimony alone was not enough to connect Roebuck to the crime – the prints upon which the expert relied still had to be proven to be Roebuck's. The State only proved this through the admission of the print card.

The print card was hearsay because it rested "mainly on the veracity and competency of other persons";[3] namely, the officer who took Roebuck's print and labeled the print card. The State did not lay a proper foundation for admission of the print card under the business records exception to the hearsay rule, nor was there any attempt to establish its admissibility under another exception to the hearsay rule. Thus, it was inadmissible hearsay.

The majority's opinion has effectively allowed an expert to serve as a conduit for introducing inadmissible evidence. The Court of Appeals has cautioned that such reasoning "would permit the admission of hearsay, speculation, and unsupported opinion, by the simple expedient of asking an expert to read the inadmissible matter into the record or testify to it while asserting that he relied upon it."[4] The Supreme Judicial Court of Massachusetts, in a case presenting similar circumstances, reversed a lower court for allowing a physician to introduce the out-of-court diagnoses of other physicians in the absence of some specific exception to the hearsay rule.[5] Other state and federal courts have expressed similar concerns regarding this use of expert testimony.[6] Expert testimony should not provide a

---

[2] See OCGA § 24-4-8 (in "felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness. . . ."); *Cummings v. State*, 240 Ga. 104, 105 (239 SE2d 529) (1977) ("[s]light evidence . . . is all that is required to corroborate [an] accomplice's testimony and support the verdict").

[3] OCGA § 24-3-1 (a).

[4] *Loper v. Drury*, 211 Ga. App. 478, 482 (440 SE2d 32) (1993).

[5] *Grant v. Lewis/Boyle, Inc.*, 408 Mass. 269, 272-274 (557 NE2d 1136) (Mass. 1990).

[6] See, e.g., *Department of Corrections v. Williams*, 549 So.2d 1071 (Fla. App. 1989) ("an

means for circumventing established hearsay rules.

2. We have long held that hearsay evidence has no probative value. Under this rationale, even though Roebuck failed to object to the admission of the print card and thus waived his right to appeal this issue,[7] the print card alone cannot corroborate the accomplice's testimony. For the reasons set forth below, we should overrule our prior holdings and hold that hearsay evidence can have probative value if admitted into evidence without objection. Under such a holding, the print card would be sufficient corroborating evidence in this case.

The rule that hearsay has no probative value even if unobjected to at trial was abandoned by the U.S. Supreme Court in the early twentieth century in *Diaz v. United States*.[8] No state other than Georgia still follows this rule.[9] The source of this rule, which has been described as a legal fiction,[10] is not a Georgia statute, but "some mid-19th century cases that were simply reflecting a view prevalent at that time."[11]

This rule creates an exception to the general rule in Georgia that errors not objected to at trial cannot be raised on appeal.[12] But there is no good reason for the exception. It cannot be said that all hearsay admitted without objection is so unreliable that it should never be considered. Indeed, some hearsay has such guarantees of trustworthiness that it is admitted into evidence under an exception to the hearsay rule. Like all other admitted evidence, hearsay admitted without objection should be considered by the trier of fact and given its appropriate weight. It should not be categorically denied from consideration simply because it is hearsay.

I have great respect for the principles of stare decisis. But as I recently noted in *Hudson v. State*, " 'the rule of stare decisis is a wholesome one, but should not be used to sanctify and perpetuate error. . . .' "[13] The rule in question has been abandoned by the U.S. Supreme Court and every other state, and there is no good reason for continuing to follow it in Georgia. On the contrary, our continued

---

expert's testimony may not be used merely to serve as a conduit to place otherwise inadmissible evidence before a jury"); *Kay v. First Continental Trading*, 976 F. Supp. 772, 774 (N.D. Ill. 1997) (warning of using expert testimony "as a vehicle for creating a 'back door' hearsay exception").

[7] See *Acliese v. State*, 274 Ga. 19, 20 (2) (549 SE2d 78) (2001).

[8] 223 U. S. 442, 450 (32 SC 250, 56 LE 500) (1912) ("of the fact that it was hearsay, it suffices to observe that when evidence of that character is admitted without objection it is to be considered and given its natural probative effect as if it were in law admissible").

[9] Paul S. Milich, Georgia Rules of Evidence, § 16.7.

[10] Id.

[11] Id.

[12] See *Acliese*, 274 Ga. at 20 (2); *Boutwell v. State*, 256 Ga. 63, 66 (344 SE2d 222) (1986).

[13] 273 Ga. 124, 128 (538 SE2d 751) (2000) (Fletcher, P. J., concurring specially).

adherence to this rule can have unfortunate consequences, as evidenced by the majority's opinion in this case. Because the majority cannot rely on the print card to corroborate, it improperly uses expert testimony for this purpose. I would overrule our longstanding rule and rely on the print card to corroborate.

SEARS, Presiding Justice, dissenting.

I agree with Chief Justice Fletcher's conclusion in his special concurrence that the expert's testimony regarding the palm print was inadmissible hearsay.[14] However, unlike Chief Justice Fletcher,[15] I am unwilling to overrule our cases that hold that inadmissible hearsay has no probative value.[16] Accordingly, because the only evidence corroborating the accomplice's testimony was hearsay that has no probative value, I conclude that the accomplice's testimony was not sufficiently corroborated. I am thus constrained to conclude that the evidence is insufficient to support Roebuck's conviction, and I must therefore dissent to the majority opinion.

DECIDED SEPTEMBER 22, 2003 —
RECONSIDERATION DENIED OCTOBER 17, 2003.

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jill M. Zubler, Assistant Attorney General*, for appellee.

---

[14] See Div. 1 of Chief Justice Fletcher's special concurrence.
[15] See Div. 2 of Chief Justice Fletcher's special concurrence.
[16] See, e.g., *Woodruff v. Woodruff*, 272 Ga. 485, 487 (531 SE2d 714) (2000).