WILLIAM D. GRANT & another[1] vs. LEWIS/BOYLE, INC.

Norfolk. April 5, 1990. - August 9, 1990.

Present: LIACOS, C.J., WILKINS, LYNCH, & GREANEY, JJ.

*Witness*, Expert. *Evidence*, Expert opinion, Hearsay. *Practice, Civil*, Instructions to jury, Directed verdict, Judgment notwithstanding verdict. *Negligence*, Repairs. *Proximate Cause*.

In a negligence action in which the plaintiffs had retained an expert witness who was a registered engineer and a member of the Massachusetts bar and who, several years prior to this action, had been retained by the defendant as an engineering expert in connection with the defense of another suit, the judge did not abuse his discretion in denying the defendant's pretrial motion to disqualify the plaintiff's expert on grounds of attorney-client privilege and conflict of interest, where the expert had never provided legal representation to either party, and where the defendant could point to no confidential information that the witness either possessed or disclosed. [271-272]

At the trial of a negligence action in which a plaintiff sought damages in connection with a back injury he suffered in the course of his employment, it was error requiring reversal for the judge to allow the plaintiffs' counsel to use the reports of nontestifying physicians concerning the plaintiff's medical diagnosis during direct and cross-examination in the absence of some specific exception to the hearsay rule where, since the improperly admitted hearsay directly contradicted a central contention of the defendant's case, the jury might have reached a different result if the evidence had been excluded and, therefore, its admission adversely affected the substantial rights of the defendant. [272-275]

At the trial of a claim alleging the plaintiff wife's loss of consortium arising from injuries sustained in connection with the plaintiff husband's back injury suffered in the course of his employment, the judge erred in refusing to give a proposed jury instruction that there was no credible expert opinion to establish the husband's impotence as a basis for loss of consortium damages. [275-276]

At the trial of a negligence action in which a plaintiff sought damages in connection with a back injury suffered in the course of his employment, the judge did not err in denying the defendant's motions for a directed

[1]His wife, Frances K. Grant.

verdict and judgment notwithstanding the verdict, where the plaintiff established a basis for a finding of negligence, and where there was evidence connecting the plaintiff's injuries with the defendant's negligence. [276-277]


CIVIL ACTION commenced in the Superior Court Department on June 9, 1983.

A motion to disqualify an expert witness was heard by *Roger J. Donahue*, J., and the case was tried before *Robert W. Banks*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert J. Murphy* for the defendant.

*Paul F. Leavis* for the plaintiffs.

LYNCH, J. The plaintiffs commenced this action in the Superior Court against the defendant, Lewis/Boyle, Inc., seeking damages in connection with a back injury that William Grant suffered in the course of his employment, while riding an "order picker" machine.[2] After a trial the jury returned a verdict for William in the amount of $165,000 on his claim alleging negligence on the part of the defendant. The jury also returned a verdict in favor of Frances, who had asserted a claim alleging loss of consortium, in the amount of $2,000. The defendant appeals claiming that the judge erred (1) in refusing to disqualify an expert witness retained by the plaintiffs; (2) in allowing the use of certain hearsay medical opinions; (3) in excluding certain deposition testimony; (4) in his refusal to give requested instructions to the jury on the loss of consortium claim; and (5) in denying defense motions for a directed verdict and judgment notwithstanding the verdict. We transferred the case here on our own initiative and con-

---

[2]The defendant had sold the order picker, an hydraulic lift machine used to raise workers to the level of high warehouse shelves, to William's employer. The plaintiffs also filed suit against the employer and the manufacturer of the order picker. The suit against the manufacturer was settled before trial, and the suit against the employer resulted in a verdict for the defendant.

clude that there was prejudicial error. We therefore remand for a new trial and address those issues raised by the defendant likely to arise on retrial.

There was evidence from which the jury could have concluded the following: William was employed by Romanow Enterprises, Inc. (Romanow). On the day of the accident he and another employee were using a model R30B order picker to take inventory of Romanow's stock. At one point the order picker's platform dropped and William hit his back on the platform rail.

An order picker operates by means of a pump motor and lift cylinder. The lift cylinder has an hydraulic piston that consists of a shell, a central rod, and an intermediate rod, which go up and down in a sequence. The machine also has a three-stage structural upright system which follows the same motion sequence as the cylinder.

On November 15, 1982, approximately one and one-half months before William's accident, Romanow reported that the order picker had dropped six feet, injuring another employee. A repairman and field service representative employed by the defendant inspected the order picker, in accordance with a maintenance contract between Romanow and the defendant. They found scratches on the cylinder which indicated that the rollers inside the uprights were worn, but they believed that this condition could not have caused such a drop. The defendant's employees did not communicate with the machine's manufacturer, The Hyster Company, about the problem. They replaced the machine's rollers and told Romanow that the order picker could be put back in use.

1. *Motion to disqualify.* Prior to the trial the defendant moved to disqualify Darry Robert Holt, an expert witness retained by the plaintiffs. Holt was a registered mechanical engineer and a member of the Massachusetts bar. Several years prior to the instant action Holt had been retained by the defendant as an engineering expert in connection with the defense of another suit. Holt testified in this earlier suit, which involved a similar piece of equipment, as a witness for the plaintiff, under subpoena. After a hearing, the defend-

ant's motion to disqualify was denied. The defendant claims
that Holt should have been disqualified on grounds of attor-
ney-client privilege and conflict of interest. We rule that the
judge did not abuse his discretion in denying the motion to
disqualify.

Holt never provided legal representation to either party. In
both cases involving the defendant Holt functioned strictly as
an expert engineer. Moreover, the defendant points to no
confidential information that Holt either possessed or dis-
closed. The conflict of interest claim, therefore, rests solely
on the fact that Holt had been previously retained by the
defendant as an expert engineer in a separate matter.

In these circumstances we perceive no reason to apply to
Holt the strictures of the attorneys' Canons of Ethics con-
cerning client confidences. See S.J.C. Rule 3:07, as amended,
398 Mass. 1108 (1986). Neither are we compelled to the
conclusion that, from the mere fact of Holt's prior engage-
ment by the defendant, a conflict arose of such magnitude as
to require his disqualification. There are no special circum-
stances, therefore, that exempt the judge's ruling from re-
view under an abuse of discretion standard. *Commonwealth*
v. *Butynski*, 339 Mass. 151, 153-154 (1959) (admission of
expert testimony within discretion of trial judge). See
*Granger* v. *Wisner*, 134 Ariz. 377, 380 (1982) (upholding
judge's refusal to disqualify defense expert previously re-
tained by plaintiff, where expert did not testify as to any con-
fidential information). No conflict of interest having been es-
tablished, the judge did not abuse his discretion in denying
the defendant's motion.

2. *The admission of hearsay opinions.* The defendant
claims that the judge erred in allowing the plaintiffs' counsel
to use the reports of nontestifying physicians concerning Wil-
liam's medical diagnosis during direct and cross-examination.
We agree.

In the course of his direct examination plaintiffs' counsel
asked his medical expert, Dr. Ralph Bender, whether he was
familiar with the reports of four other physicians who had
examined or treated William. Over defense counsel's objec-

tions Dr. Bender was allowed to testify that each physician had diagnosed the plaintiff as having a lumbar disc injury to his back.

The judge stated that he was admitting these diagnoses "as history." "It is settled that an expert witness may not, under the guise of stating the reasons for his opinion, testify to matters of hearsay in the course of his direct examination unless such matters are admissible under some statutory or other recognized exception to the hearsay rule." *Kelly Realty Co.* v. *Commonwealth*, 3 Mass. App. Ct. 54, 55-56 (1975). See *Framingham* v. *Department of Pub. Utils.*, 355 Mass. 138, 145 (1969); P.J. Liacos, Massachusetts Evidence 112-113 (5th ed. 1981).

Rule 803 (6) of the proposed Massachusetts Rules of Evidence, which is identical for our purposes here to Fed. R. Evid. 803 (6), provides in pertinent part as follows:

> "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> "...
> "(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

The diagnoses in question, therefore, would be admissible under the proposed rule if the preconditions of the rule were

met. See, e.g., *Higgins* v. *Martin Marietta Corp.*, 752 F.2d 492, 497 (10th Cir. 1985); *Glawe* v. *Rulon*, 284 F.2d 495, 498 (8th Cir. 1960).[3] William, however, does not urge that we adopt the proposed rule and did not do so at trial. Instead he argues that testimony was properly admitted to show the basis of Dr. Bender's opinion. Although it would have been proper for Dr. Bender to testify that he relied on the reports of other physicians in reaching his opinion, it was not proper for him to introduce their out-of-court diagnoses in the absence of some specific exception to the hearsay rule. See *Framingham* v. *Department of Pub. Utils., supra*; P.J. Liacos, Massachusetts Evidence, *supra* at 111.

The plaintiffs find such a specific hearsay exemption in G. L. c. 233, § 79G, as appearing in St. 1988, c. 130, an amendment adopted after the trial of this case. That statute, however, provides that such reports are admissible only after a pretrial notice to the opposing party, the purpose of which is to give the opposing party the opportunity to summons the physician for the purposes of cross-examination. Since no such opportunity existed here, the reports in question could not have been properly introduced absent live testimony, even if the provisions of the amended § 79G applied. Since physicians' reports will be addressed in future cases under the carefully crafted provisions of § 79G, we see no reason to adopt the provisions of rule 803 (6) of the proposed Massachusetts Rules of Evidence, in order to accomplish the same result.

Since the physicians' reports should not have been admitted, we must decide whether the defendant has demonstrated prejudice that entitles it to a new trial. The Legislature has said that an error in the admission of evidence should not be ground for a new trial unless the error has injuriously affected the "substantial rights of the parties." G. L. c. 231,

---

[3]Although this court has not adopted the proposed Massachusetts Rules of Evidence, we have invited parties to cite the proposed rules as an aid to continuing the common law development of the rules of evidence. See S.J.C. 2787, Announcement Concerning the Proposed Massachusetts Rules of Evidence (Dec. 30, 1982).

§§ 119 and 132 (1988 ed.). *DeJesus* v. *Vogel*, 404 Mass. 44, 48 (1989). We have said in the case of erroneously excluded evidence that the appropriate test is whether the proponent has made a "plausible showing that the trier of fact might have reached a different result if the evidence had been before it." *Id.* at 48-49.

Here the improperly admitted hearsay directly contradicted a central contention of the defendant's case. The defense proceeded on the theory that the order picker platform could not have fallen in the manner alleged by the plaintiffs, and that William's back problems were attributable to preexisting arthritis. Because the hearsay went to a central issue in dispute, we conclude that the jury might have reached a different result if the evidence had been excluded, and, therefore, that its admission injuriously affected the substantial rights of the defendant. See G. L. c. 231, § 119; *Irwin* v. *Ware*, 392 Mass. 745, 751 (1984); *Wingate* v. *Emery Air Freight Co.*, 385 Mass. 402, 407 (1982).

3. *Instructions to the jury.* The defendant claims that the judge erred in refusing to give a proposed jury instruction on the issue of William's alleged impotence as a basis for loss of consortium damages. The defendant points out that there was no medical expert testimony either substantiating William's alleged impotence or demonstrating that it was caused by the defendant's actions. The defendant contends, therefore, that the following requested instruction should have been given: "You may not award damages to either Mr. or Mrs. Grant for Mr. Grant's impotence. There is no credible expert opinion to establish such impotence relates to Mr. Grant's alleged incident of December 27, 1982."

We agree that the substance of the proposed instruction should have been given. Although a judge enjoys significant latitude in framing the language of his jury instructions, *Commonwealth* v. *Kelley*, 359 Mass. 77, 92 (1971), and is not required to use the specific language requested by a party, *Fialkow* v. *DeVoe Motors, Inc.*, 359 Mass. 569, 575 (1971), an objection does lie if a significant matter is not

dealt with at all. See *Potter* v. *John Bean Div. of Food Mach. & Chem. Corp.*, 344 Mass. 420, 425-427 (1962).

Although William and Frances testified that they had not had sexual relations since the accident, there was no medical evidence diagnosing the cause as William's impotence or linking it to the accident. The alleged causal link between the accident and William's impotence was a technical matter beyond the scope of ordinary experience, and, therefore, expert testimony was necessary. *Kaye* v. *Newhall*, 356 Mass. 300, 303 (1969), *S.C.*, 360 Mass. 701 (1972) (expert medical testimony necessary to demonstrate that defendant's actions. caused plaintiff's alleged impotence). *Triangle Dress, Inc.* v. *Bay State Serv., Inc.*, 356 Mass. 440 (1969) (expert testimony necessary to demonstrate that the actions of defendant's repairman caused subsequent air conditioner malfunction). See generally P.J. Liacos, Massachusetts Evidence, *supra* at 103.

4. *Motions for a directed verdict and judgment notwithstanding the verdict.* The defendant also claims that the judge erred in denying his motions for a directed verdict and judgment notwithstanding the verdict. We disagree.

Holt established a basis for a finding of negligence. He testified that the defendant's repairman, upon inspecting the order picker after the November 15 accident, should have recommended the replacement of the order picker's lift cylinder. Holt testified further that the most probable cause of the accident involving the plaintiff was binding of the central and intermediate rods of the lift cylinder while hydraulic fluid drained out. He supported this opinion by pointing to scratches, called "scoring," found on the cylinder after the accident.

In addition, there was evidence connecting William's injuries with the defendant's negligence. On the evening of the accident, the plaintiff was evaluated at Cardinal Cushing Hospital and advised to seek orthopedic treatment. Dr. Bender examined the plaintiff shortly thereafter, and testified that the plaintiff had suffered a lumbar disc injury.

We conclude that the judge's denial of the motions for directed verdict and judgment notwithstanding the verdict was proper.

5. *Conclusion.* The judgments in favor of the plaintiffs William D. Grant and Frances K. Grant are reversed. The case is remanded for a new trial consistent with this opinion.

*So ordered.*