WILLIAM N. CAMPBELL & another[1] vs. CAPE & ISLANDS
HEALTHCARE SERVICES, INC.,[2] & others.[3]

No. 10-P-2017.

Barnstable. October 12, 2011. - February 7, 2012.

Present: GRAINGER, FECTEAU, & AGNES, JJ.

*Negligence,* Medical malpractice, Violation of regulation, Expert opinion.
*Practice, Civil,* Instructions to jury. *Evidence,* Regulations, Qualification of
expert witness. *Medical Malpractice. Regulation. Witness,* Expert.

At the trial of a civil action alleging negligence by the defendants, who oper-
ated a collection laboratory at which the plaintiff had blood drawn shortly
before suffering injuries in an automobile accident while in a hypoglyce-
mic condition, the judge erred in declining to instruct the jury, in the
absence of opinion testimony that the laboratory had failed to comply with
a regulation, as to the significance of a finding by the jury that such a
violation had taken place, where no opinion testimony was required
[254-255]; and where the evidence presented to the jury implicated the
regulation by raising factual issues regarding the adequacy of the laboratory's
policy and procedures, i.e., whether the protocol in existence complied
with the regulation [255-258]; further, this court concluded that the error
prejudiced the substantial rights of the parties [258-259].
Discussion of the procedure by which the judge before whom a civil action is
being tried determines, as gatekeeper, whether an expert is qualified to
provide opinion testimony, and instructs the jury regarding such testimony.
[259-260]

CIVIL ACTION commenced in the Superior Court Department on
November 28, 2003.

The case was tried before *Robert C. Rufo,* J.

*Charles G. Devine, Jr.,* (*Joseph F. Cavanaugh, III,* with him)
for the plaintiffs.

*Claudia A. Hunter* for Arthur Aaronson & another.

*Brett R. Corson,* for Cape & Islands Healthcare Services,
Inc., was present but did not argue.

[1] Deborah A. Campbell.
[2] Doing business as C-LAB.
[3] Arthur Aaronson and Cape Cod Pathology Consultants, P.C.

FECTEAU, J. The plaintiffs, husband William N. Campbell (Campbell) and wife, Deborah A. Campbell, sued Cape and Island Health Care Services (clinic), Cape Cod Pathology Consultants, P.C. (professional corporation), and various individual defendants alleging medical malpractice, seeking to enforce their liability for damages suffered by Campbell in an ensuing automobile accident moments following a blood draw. After two medical malpractice tribunals concluded that there was insufficient evidence with respect to some defendants, settlements and dismissals ensued; trial then proceeded against the remaining defendants, namely the clinic, Dr. Arthur Aaronson, and the professional corporation. The jury returned a special verdict in favor of those defendants, finding no negligence.

The plaintiffs claim error by the judge in the admission of testimony by a defense witness characterized as an expert, the lack of a jury instruction related to the defendants' compliance with 105 Code Mass. Regs. § 180.042 (1994), improper closing argument by defense counsel, and the denial of plaintiffs' motions for a directed verdict. As we discern prejudicial error in the omission by the judge of a jury instruction concerning the admitted regulation, we must reverse.

*Background.* The jury could have found the following. Campbell, who has a history of an unsteady gait, weakness, and muscle inflammation, presented at the clinic on Saturday, December 2, 2000, approximately between 8:00 and 8:30 A.M., to have his blood drawn for a three-hour glucose tolerance test. This involved five blood draws consisting of a "fasting" blood draw, followed by ingestion of a glucose drink at 8:45 A.M., and then additional draws at thirty minutes, one hour, two hours, and three hours intervals following his consumption of the glucose drink. He was observed on arrival at the clinic to have an unsteady gait and a pale visage, and proclaimed himself to be "tired." As time progressed he also exhibited lack of coordination and sweating. Between the thirty-minute and one-hour draws, he became sufficiently weak and unsteady so that the staff brought him to a recliner and gave him water to drink. He remained in the recliner for the balance of the test. After leaving the clinic, Campbell was involved in a serious single car accident in which he struck a util-

ity pole while in a hypoglycemic (low blood sugar) condition.[4] We reserve the discussion of other pertinent facts for our analysis as necessary.

*Discussion. Jury instruction/Code of Massachusetts Regulations.* After a lengthy mid-trial hearing, the judge admitted 105 Code Mass. Regs. § 180.042(A)(3) (1994) in evidence.[5] When requested to instruct the jury as to the significance of a finding, by the jury, of a failure to comply with a safety statute or regulation, the judge declined to do so. The plaintiff contends that this was substantial error.

a. *Opinion evidence in regard to violations of regulations.* First, to the extent that, as a condition for the instruction, the judge required a witness to testify that the Code of Massachusetts Regulations was violated, this was error.

It is well established that "[a] violation of a statute, ordinance or regulation, although not conclusive, is evidence of negligence on the part of a violator as to all consequences that the statute, ordinance or regulation was intended to prevent." *Follansbee* v. *Ohse,* 293 Mass. 48, 52 (1935), quoting from *Guinan* v. *Famous*

---

[4]As the clinic was a collection laboratory, clinic staff did not perform the chemical analysis of the blood drawn but instead sent the blood to the laboratory at the Cape Cod Hospital. Later that afternoon, the analysis showed the plaintiff to have a glucose level from the last blood draw, taken at 11:45 A.M., of 35, an abnormally low level.

[5]This section provides, in pertinent part, as follows:

> "The director of the laboratory of which the approved blood collection station is a part shall be responsible for all aspects of the blood collection station, including without limitation, the physical plant, personnel, processing and transport of specimens. The director of the laboratory of which the approved blood collection station is a part (or his/her designee) shall be available to blood collection station personnel at all times during the operation of the station for personal or telephone consultation and shall make periodic personal inspections of the station to insure suitable handling of patients and specimens and to instruct the employees in such matters and in the most recent improvements in technique. The director of the laboratory of which the approved blood collection station is a part (or his/her designee) shall establish protocol for action in cases of emergency which must include, without limitation, the immediate availability of a physician or emergency medical service. Any technical employee of a blood collection station must be proficient in venipuncture, specimen processing as limited by 105 Code Mass. Regs. [§] 180.000, and emergency procedures required to aid a distressed patient."

*Players-Lasky Corp.*, 267 Mass. 501, 516 (1929). In Massachusetts, "it is entirely proper to offer in evidence . . . [an official regulation] to show the relevant standard of care." *Herson* v. *New Boston Garden Corp.*, 40 Mass. App. Ct. 779, 793 (1996). While evidence that a statute was violated is some evidence of negligence, it does not constitute negligence per se. *Ibid.* However, our courts have not ruled, and the defendants offer no basis for the assertion that, in order for a jury to consider the violation of a regulation as evidence of negligence, a witness must testify that the regulation was violated.[6] See, e.g., *Perry* v. *Medeiros*, 369 Mass. 836, 842 (1976) (it was for jury to find violation of building code as evidence of negligence without testimony by building inspector that there was a violation of the code); *Matteo* v. *Livingstone*, 40 Mass. App. Ct. 658, 663 (1996) (finding it proper to exclude expert witness testimony regarding building code allegedly violated in negligence case); *Deguio* v. *United States*, 732 F. Supp. 1240 (D. Mass. 1990) (ruling in a jury-waived trial applying Massachusetts law that circumstantial evidence could be relied upon to determine if regulation violated). See also *Toubiana* v. *Priestly*, 402 Mass. 84, 90 (1988) (fact that expert gave testimony on issue contrary to the jury verdict did not render the jury verdict erroneous).

While it is true that a "judge need not instruct the jury on every spin that a party can put on the facts," and will not provide an "instruction that is not relevant to the facts of the case," *Boothby* v *Texon, Inc.*, 414 Mass. 468, 483, 484 (1993), that is not the case here.

b. *Relevance of regulation to protocols and procedures.* Through five separate witnesses called at trial, the plaintiffs introduced ample evidence to show the relevance of the regulation pertaining to blood laboratories to the defendants' alleged negligence and the manner in which the defendants failed to comply with this regulation.

Deborah Hobill, a phlebotomist employed at the clinic, identi-

---

[6]We note that, notwithstanding the judge's erroneous conclusion that a witness must testify to a law's violation, the plaintiffs' witness, Dr. David Rosenthal, met this incorrect standard when he stated that the protocols in the lab were "inadequate" relative to 105 Code Mass. Regs. § 180.042(A)(3). Thus, even if the standard stated by the judge were correct, it was error to rule that there was no testimony which satisfied it.

fied a phlebotomy procedure manual (manual) that was in effect at the clinic in December of 2000, which she described as her exclusive resource for information concerning the policies and procedures at clinic. Hobill testified that she had no authority to operate outside the procedures in the manual. Hobill further admitted she had never initiated a medical intervention for any reactions not listed in the "Instructions for Treatment of Reactions" contained in the manual, and that the comment to the protocols set forth in the manual stated that in the event of a reaction, the employee should call the supervisor, and that only a supervisor may call a physician. Hobill further testified that while she worked at the clinic, no medical doctor was present at any time. She was not aware whether a doctor was ever on-call at the clinic, or whether there were any on-call lists for doctors to consult during the course of her duties at the clinic.

Testimony also revealed that the manual included specific instructions for clinic phlebotomists in the event a patient exhibited one of the following symptoms: fainting, nausea and vomiting, hyperventilation, convulsions, hematoma, or cardiac or respiratory difficulties. The manual listed no additional signs or symptoms. Hobill admitted that, at the time of Campbell's glucose tolerance test, she did not know the signs and symptoms of hypoglycemia, and had no knowledge relating to cognitive changes that a hypoglycemic patient may experience.

Dr. David Rosenthal testified that at 12:00 P.M. on December 12, 2000, Campbell was hypoglycemic. In testifying that the protocol at the clinic relating to glucose tolerance tests were deficient and did not meet the standard of care, Rosenthal specifically opined that the protocols at the clinic did not adequately address hypoglycemia as the principal, most dangerous, and most common problem that can arise during a glucose tolerance test. Rosenthal testified that the clinic provided inadequate information to phlebotomists to deal with hypoglycemia, and that the symptoms outlined in the clinic protocol did not adequately describe the common symptoms of hypoglycemia. That failure left untrained phlebotomists without guidance as to how treat patients.

The plaintiffs also elicited testimony from Aaronson raising the issue of adequate supervision, bearing on the requirements

of 105 Code Mass. Regs. § 180.042(A)(3). In his testimony, Aaronson made several admissions regarding his availability to be consulted by on-duty staff at the clinic and his deference to the protocols in place. Aaronson further conceded that symptoms of hypoglycemia, including Campbell's symptoms, were not contained in the clinic manual. A representative from the Department of Public Health, Claire Abdelahad, was questioned about the relevant regulation governing the operation of blood collection facilities and with respect to the availability of the director and emergency medical service, speaking at great length about the specific requirements of 105 Code Mass. Regs. § 180.042 (1994) and how that regulation related to the operation of the clinic.[7] The issue of the defendants' conformance to these regulations was the subject of extensive inquiry and testimony.

A myriad of evidence presented at trial implicated 105 Code Mass. Regs. § 180.042(A)(3), thereby making it clear that there was a potential violation of the regulation relevant to the underlying negligence claim to be decided by the jury.[8] As a significant portion of the testimony at trial was directed toward the adequacy of the said procedures, whether the protocol in existence complied with the regulation became an essential issue in the trial.[9] Moreover, the testimony given by Abdelahad emphasized the

[7]The judge also admitted an investigative report composed by Abdelahad that noted several symptoms the plaintiff exhibited during his testing at the clinic, including paleness, loss of coordination and motor skills, swaying, and tiredness, noting that none of these symptoms were noted in the manual or other protocols at the clinic. When questioned about the fact that the clinic nevertheless carried a certification by the Department of Public Health, Abdelahad admitted that in her role as inspector, she only verified that a facility had a policy in place and did not review the content of the specific policy.

[8]As to the issue of negligence, specifically whether Aaronson breached the standard of medical care owed to the plaintiff, the judge instructed the jury as follows: "A doctor's conduct is not tested by standards of perfection or excellence, or even by current standards, but they are bound by the standards of care and skill and advancement of the profession in or around the time frame of this case, December 2nd, 2000, amongst average qualified physicians serving as medical directors of a similar blood collection facility. . . . [T]he fact that in retrospect a doctor's judgment was incorrect is not, in and of itself, enough to prove medical negligence."

[9]The centrality of the regulation to the trial could not have been increased by additional testimony speculating on compliance therewith, nor would the testimony of an expert offer any more conclusive evidence for the jury; negligence is solely a factual determination made by the jury. See discussion part a., *supra*.

specific requirements of 105 Code Mass. Regs. § 180.042(A)(3). Abdelahad read the entirety of the text into the record, and the plaintiffs thus introduced the regulation into evidence; Abdelahad further opined on the protocol in a "typical" blood collection facility. The evidence presented to the jury therefore implicates 105 Code Mass. Regs. § 180.042 by raising factual issues regarding the adequacy of the policy and procedures, including both the emergency protocol and recommended employee response, as well as the failure to have adequate medical supervision.

The judge, however, did not instruct the jury on how to weigh the evidence in its deliberations. "Although a judge enjoys significant latitude in framing the language of his jury instructions, . . . an objection does lie if a significant matter is not dealt with at all." *Grant* v. *Lewis/Boyle, Inc.,* 408 Mass. 269, 275-276 (1990). Cf. *Haggerty* v. *McCarthy,* 344 Mass. 136, 139 (1962), quoting from *Bouffard* v. *Canby,* 292 Mass. 305, 309 (1935) ("It is only exceptional cases that a jury instructed by common knowledge and experience may without the aid of expert medical opinion determine whether the conduct of a physician toward a patient is violative of the special duty which the law imposes . . ."). "It is the duty of the judge . . . to give full, fair, correct and clear instructions as to the principles of law governing all the essential issues presented, so that the jury may understand their duty and be enabled to perform it intelligently." *Hopkins* v. *Medeiros,* 48 Mass. App. Ct. 600, 611 (2000), quoting from *Fein* v. *Kahan,* 36 Mass. App. Ct. 967, 968 (1994). Where "[s]ubstantial evidence was presented at trial to warrant instructions concerning [proper consideration of the regulations] . . . the judge should not have left the jury uninformed as to the law concerning the duty owed to a [plaintiff]." *Hopkins* v. *Mederios, supra.* Since the judge had a duty to inform the jury as to the legal significance of the regulation, his refusal to instruct on this evidence was error.

Having determined error, the next step in our analysis is to determine "whether the [plaintiff] has made a 'plausible showing that the trier of fact might have reached a different result.' " *Grant* v. *Lewis/Boyle, Inc.,* 408 Mass. at 275, quoting from *DeJesus* v. *Yogel,* 404 Mass. 44, 48-49 (1989). See Mass.

R.Civ.P. 61, 365 Mass. 829 (1974).[10] See also *Global Investors Agent Corp.* v. *National Fire Ins. Co. of Hartford*, 76 Mass. App. Ct. 812, 825 (2010) ("Even were we to conclude that the instruction was legally erroneous, we are unconvinced that the plaintiffs were so prejudiced by any error as to require reversal"). We are not convinced that this error was harmless.

As noted, the jury specifically found, by special verdict, that there was no negligence. Given the weight that a jury may attach to a finding, if any, that a safety regulation was violated, we are unable to say with substantial confidence that an instruction from the judge on the relevance of such a violation would not have made a material difference to its determination of negligence; the substantial rights of the plaintiff were prejudiced. Reversal is required.

*Expert witness qualification.* The plaintiff asserts error in the judge's refusal to rule on his objection to the qualifications of James Nichols, proffered as an expert by the defendants, and in what he characterizes as delegation by the judge of his role of gatekeeper to the jury. See *Commonwealth* v. *Lanigan*, 419 Mass. 15, 25-26 (1994) (adopting requirement, from *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579 [1993], that judge must serve as gatekeeper in qualifying an expert witness). The panel is divided on whether, and to what extent, the judge erred in his rulings on this issue, but is in agreement that the words by which the judge chose to communicate his ruling on the issue created confusion. We do not address the claim of error because we do not anticipate a recurrence of the issue on remand. Given the avoidable nature of this appellate issue, however, we provide the following guidance.

The trial judge, as gatekeeper, should make a clear ruling on the record outside the presence of the jury whether the expert is qualified in accordance with sections 104(a) and 702 of the

---

[10]Rule 61 states: "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Mass. G. Evid. (2011 ed.). If the judge rules that the witness is qualified to provide opinion testimony, counsel may argue that the jury can consider the knowledge, training, and experience of the expert in deciding how much weight to give his testimony. The judge's instructions should follow the language of § 4.10 of the Massachusetts Superior Court Civil Practice Jury Instructions (Mass. Cont. Legal Educ. 2d ed. 2008). See *Antonellis* v. *Leibovich,* 410 Mass. 568, 571-572 & n.5 (1991).

*Conclusion.* We do not address the plaintiffs' remaining assertions of error as we anticipate they will not be pertinent if the matter is retried. The judgment is reversed.

*So ordered.*