## S99A0741. FUSS v. THE STATE.
### (519 SE2d 446)

CARLEY, Justice.

After conducting a bench trial, the trial court found Charles Fuss guilty, but mentally ill, of malice murder and armed robbery. The trial court entered judgments of conviction, and imposed a life sentence for the murder and a concurrent ten-year sentence for the armed robbery. Fuss filed a motion for new trial and, when the trial court denied that motion, he filed this appeal.[1]

1. The victim was Fuss's mother. Fuss did not deny committing the homicide and robbery, but raised insanity as a defense. According to the State's evidence, Fuss, who has a history of mental illness, was angry with his mother and methodically planned to kill her. He hid an ax in his bedroom and, when his mother came to assist him with the cleaning, he asked her to look under his bed. As she complied with this request, Fuss retrieved the ax and struck a fatal blow to her head. He then cleaned the ax and returned it to its original location. After stealing money from his mother's purse, Fuss took a taxi to a local bar. The next morning, he began hitchhiking to California. He traveled only as far as Arkansas, where he voluntarily surrendered to police and gave incriminating statements. A psychologist called by

---

[1] The crimes occurred on June 21, 1996. The grand jury indicted Fuss on September 6, 1996. The trial court found Fuss guilty, but mentally ill, on December 5, 1997, and, on that same day, it entered the judgments of conviction and sentences. Fuss filed his motion for new trial on January 2, 1998, and the trial court denied that motion on January 4, 1999. Fuss filed his notice of appeal on January 28, 1999. The case was docketed in this Court on February 23, 1999. The appeal was submitted for decision on April 19, 1999.

the defense testified that, in his opinion, Fuss was legally insane at the time he killed his mother and stole her money. However, the State produced its own expert who testified to the contrary opinion.

The applicable standard of review "is whether after reviewing the evidence in the light most favorable to the [S]tate, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the crime. [Cit.]" *Brown v. State*, 250 Ga. 66, 71-72 (2) (c) (295 SE2d 727) (1982). "[T]he fact that a person is schizophrenic or suffers from a psychosis does not mean he meets the test of insanity requiring a verdict of not guilty on the basis of insanity. [Cit.]" *Nelms v. State*, 255 Ga. 473, 475 (2) (340 SE2d 1) (1986). The trial court, sitting as the trier of fact, was not compelled to accept the testimony of Fuss's psychologist, but was authorized to find proof of Fuss's criminal intent based upon the testimony of the State's expert, as well as the words, conduct, demeanor, motive and other circumstances connected with Fuss's acts. *Pittman v. State*, 269 Ga. 419, 420 (499 SE2d 62) (1998); *Foote v. State*, 265 Ga. 58, 59 (1) (455 SE2d 579) (1995). Thus, the trial court was authorized to find that Fuss failed to prove his insanity by a preponderance of the evidence, and that the State met its burden of proving that Fuss was guilty, but mentally ill, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Lawrence v. State*, 265 Ga. 310 (1) (454 SE2d 446) (1995).

2. Fuss asserts that it was error to admit his inculpatory custodial statements into evidence, because he was insane at the time of his post-arrest interviews. Whether Fuss was insane when he made the statements in Arkansas is a separate issue from his insanity at the time he committed the acts in Georgia. See *Kimbell v. State*, 252 Ga. 65, 66 (1) (311 SE2d 465) (1984). Likewise, the question of his sanity when he gave the statements is distinct from the traditional inquiry into whether he made them voluntarily. See *Kimbell v. State*, supra at 67 (2). Fuss cites nothing in the record to show that, during the course of his bench trial, he specifically advised the trial court of an objection to the introduction of the statements on the basis of his insanity at the time of his arrest and interrogation in Arkansas. Compare *Nelms v. State*, supra at 474 (1); *Kimbell v. State*, supra at 66 (1). Moreover, it does not appear that Fuss proffered any evidence as to that particular issue. Instead the defense focused exclusively on Fuss's insanity at the time of the homicide and robbery. See *Kimbell v. State*, supra at 66 (1). Compare *Nelms v. State*, supra at 474 (1). When the trial court indicated that it would admit the statements because Fuss freely and voluntarily waived his rights, defense counsel did not insist that the trial court address the separate issue of Fuss's insanity during the post-arrest period. Only in his motion for

new trial did Fuss question the admissibility of his statements on that basis. In addressing this ground of the motion for new trial, the trial court found that Fuss was not insane at the time he gave the statements to the Arkansas officers. Thus, the trial court did make a ruling when Fuss finally presented the issue, and an appellate court must accept its finding unless it is clearly erroneous. *Nelms v. State*, supra at 474 (1). "Even highly disturbed and psychotic persons are capable of periods of understanding and lucidity[.] . . ." *Harris v. State*, 256 Ga. 350, 353 (4) (349 SE2d 374) (1986). Considering the uncontroverted testimony of the Arkansas officers, we cannot say that the trial court's finding that Fuss was not insane when he incriminated himself is clearly erroneous. Therefore, admission of Fuss's statements was a proper evidentiary ruling.

3. When the trial court asked Fuss's psychologist whether it was possible for a person to manifest rational behavior while in a psychotic state, he responded: "Sure. Let me – I mean, that's very possible; and let me . . . just explain how. . . ." Before the witness could elaborate, however, the prosecutor objected because the trial court had not posed the same question to the State's expert. The trial court withdrew its question, and Fuss urges that the trial court erred in doing so. The extent to which a trial court will exercise its authority to examine a witness is a discretionary matter. *Eubanks v. State*, 240 Ga. 544, 547 (2) (242 SE2d 41) (1978). Having posed the question initially, the trial court certainly acted within its discretion when it withdrew it.

The trial court also refused to allow Fuss himself to pose the question to the psychologist. Because the expert was a defense witness on direct examination, Fuss was required to make a proffer in order to preserve this issue for appellate review. *Cruz-Padillo v. State*, 262 Ga. 629, 631 (4) (422 SE2d 849) (1992). However, Fuss made no attempt to show the substance of his witness' excluded testimony. If Fuss "did not intend to acquiesce in the court's ruling, he should have made apparent in some proper way what the testimony would have been, for without this showing this court can not determine whether injury resulted." *Hall v. State*, 202 Ga. 619, 621 (2) (44 SE2d 234) (1947).

Moreover, before the State interposed its objection, the witness already expressed his affirmative opinion that it was possible for a person to manifest rational behavior while in a psychotic state. The State made no motion to strike this testimony, and the trial court's ruling sustaining the State's objection only precluded the expert from expounding on his opinion. Fuss suggests no reason why exclusion of the psychologist's additional testimony in this regard was harmful error requiring the grant of a new trial. The only relevant issue was Fuss's sanity at the time he killed his mother and took her money,

and, as expected, the defense expert expressed and adhered to the opinion that, despite any appearances to the contrary, Fuss was insane at that time. Additional evidence merely explanatory of the psychologist's opinion that Fuss was insane could not have affected the result of this bench trial. See *Hill v. Balkcom*, 213 Ga. 58, 60 (2) (96 SE2d 589) (1957).

*Judgments affirmed. All the Justices concur.*

DECIDED JULY 6, 1999.

*Maryann F. Blend,* for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Frank A. Ilardi, Assistant Attorney General,* for appellee.