## S00A0865. HUDSON v. THE STATE.
(538 SE2d 751)

HINES, Justice.

J. H. Hudson, Sr., appeals his convictions for malice murder and aggravated assault in connection with the death of his wife, Louise Hudson. For the reasons that follow, we reverse.[1]

---

[1] The crimes occurred on December 18, 1995. On March 4, 1997, a Fulton County grand jury indicted Hudson for malice murder, felony murder in the commission of aggravated assault, aggravated assault on Louise Hudson, and three other counts of aggravated assault.

Louise Hudson was shot in the kitchen of the couple's home. Their two adult children, Melanie and Daniel, ran to the kitchen to see what had happened. Louise Hudson, grasping her chest, told the children "he shot me," and said to call the police. Hudson was standing in the kitchen with a pistol in his hand. Melanie ran to her bedroom to call the police and Hudson put the cocked pistol to Daniel's head. Daniel asked why Hudson shot his mother, and he said that yes, he had shot her. Hudson then stepped over Louise's body, and Daniel ran from the kitchen and from the house. Hudson pursued Daniel through the house and fired at him three times. Police arrived and Hudson fired at them; the police shot Hudson to subdue him. Louise Hudson died from the single gunshot wound to the chest. Hudson admitted to the arresting officers that he had shot her because he believed that she was having an affair and later claimed that she was participating in a conspiracy with his co-workers to "get" him. He stated that he was mentally ill and deserved to die.

Hudson pled not guilty by reason of insanity to the charges against him, and was found by a jury to be guilty but mentally ill on all counts.

1. Hudson did not deny the shootings, but raised the defense of insanity. Thus, questions on review are whether, viewing the evidence in the light most favorable to the verdicts, a rational trier of fact could have found that Hudson failed to prove by a preponderance of the evidence that he was insane at the time of the crimes, and whether the State met its burden of proving he was guilty, but mentally ill, beyond a reasonable doubt. See *Fuss v. State*, 271 Ga. 319, 320 (1) (519 SE2d 446) (1999).

There was expert testimony that, at the time of the shootings, Hudson had the mental capacity to distinguish between right and wrong. See OCGA § 16-3-2. There was also evidence from which the jury could conclude that, if Hudson was acting under a delusional compulsion, the delusion did not relate to any fact which, if true, would have justified his actions. See OCGA § 16-3-3; *Lawrence v. State*, 265 Ga. 310 (2) (454 SE2d 446) (1995). The evidence authorized the jury to reject Hudson's insanity defense and to find beyond a reasonable doubt that he was guilty of the crimes charged, but mentally ill. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d

He was tried before a jury between June 16, 1997 and June 30, 1997, and found guilty, but mentally ill, as to all charges. On June 30, 1997, he was sentenced to life in prison for malice murder, and three terms of twenty years for aggravated assault, to be served consecutive to the life term; the aggravated assault on Louise Hudson merged with the malice murder, and the conviction for felony murder stood vacated by operation of law. Hudson moved for a new trial on July 29, 1997, which was denied on July 26, 1999. He filed a notice of appeal on August 5, 1999. His appeal was docketed in this Court on February 11, 2000, and submitted for decision on April 10, 2000.

560) (1979); *Fuss,* supra; *Lawrence,* supra.

2. Hudson introduced an expert witness, Dr. Hilton, to support his insanity defense. During cross-examination, the State asked who had requested that Hilton evaluate Hudson, and Hilton responded that defense counsel had done so. The State then asked if he was paid for his services, and Hilton responded that he was.

On re-direct examination, Hudson asked Hilton how he was being paid, and the court sustained the State's objection to this question. Hilton was paid by court funds, and the court ruled the jury should not get the impression that by ordering that Hilton be paid, the court was in some way endorsing Hudson's insanity defense. The court also noted that it was inappropriate for the jury to be informed that Hudson was indigent.

> "The admission of evidence is a matter which rests largely within the sound discretion of the trial judge." [Cit.] However, "[t]he Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value," [cits.], and evidence is relevant if it renders the desired inference more probable than it would be without the evidence. [Cit.]

*Baker v. State,* 246 Ga. 317, 319 (3) (271 SE2d 360) (1980). Here, the court abused its discretion. The State's cross-examination left the jury with the clear impression that Hudson had hired Hilton and was paying him for the examination and his testimony. Insanity was Hudson's sole defense, and the State directly attacked the primary evidence in support of that defense by questioning that suggested that Hilton was being paid for beneficial testimony. Thus, Hilton's credibility had been denigrated, the facts of his employment had become pertinent to the trial, and Hudson was entitled to counter the innuendo. See *Blige v. State,* 264 Ga. 166, 167 (2) (441 SE2d 752) (1994). The court should have allowed the attack on Hilton's credibility to be rebutted with testimony that the funds Hilton was receiving did not come from Hudson, and it could have fully charged the jury that the court's role in procuring Hilton's services in no way reflected any court approval of the merits of the defense.

The defense of insanity, and the State's evidence in opposition to it, was primarily a matter of expert testimony, and it cannot be concluded that allowing this unrebutted attack on Hilton's credibility is harmless. Consequently, a new trial is necessary. Because the issues raised in Hudson's remaining enumerations of error may recur on retrial, they will be addressed.

3. Hudson contends that an audiotape of Melanie Hudson's 911 emergency telephone call was admitted into evidence without meet-

ing the foundation requirements for introduction of an audiotape listed in *Page v. State*, 249 Ga. 648 (292 SE2d 850) (1982). However, in *Phagan v. State*, 268 Ga. 272, 279-281 (5) (486 SE2d 876) (1997), this Court addressed the "difficulty inherent in authenticating a photo, motion picture, videotape or audiotape when an authenticating witness was unavailable." Id. at 280. *Phagan* held that when a party seeks to authenticate such material, and the authenticating witness is not "unavailable" under OCGA § 24-4-48, nonetheless, "a videotape is admissible where the operator of the machine which produced it, or one who personally witnessed the events recorded testifies that the videotape accurately portrayed what the witness saw take place at the time the events occurred." Id. at 281. For such purposes, there is no distinction between the videotape at issue in *Phagan* and the audiotape at issue here; both can be authenticated by the testimony of one who was a party to the events recorded on the tapes. Melanie Hudson testified that she had reviewed the 911 tape and that it accurately portrayed the conversation she had with the 911 operator, with no deletions, additions, or alterations. There is no error.

4. The State asked Hilton whether Hudson was competent to stand trial, and the court overruled Hudson's objection that this issue was irrelevant to his defense of insanity. The defense of insanity and the defendant's competence to stand trial are separate issues. See OCGA §§ 16-3-2 & 17-7-130; *Newman v. State*, 258 Ga. 428, 429 (1), n. 2 (369 SE2d 902) (1988); *Brooks v. State*, 247 Ga. 744 (279 SE2d 649) (1981). Inquiry into "an accused's competency to stand trial is a totally different inquiry" than inquiry into "insanity at the time of the criminal act." *Baker v. State*, 250 Ga. 187, 189 (1) (297 SE2d 9) (1982). While it may be possible for the issue of competency to be relevant to the determination of a defendant's sanity or insanity at the time of the act for which he is on trial, the State made no showing that Hilton's opinion as to Hudson's competency to stand trial was relevant to the jury's decision on Hudson's plea of not guilty by reason of insanity. The court erred in overruling the objection.

5. The prosecutor compared Hudson to well-known murderers Charles Manson, David Berkowitz, and Jeffrey Dahmer, noting that they too contended that they were not guilty by reason of insanity and were delusional, but were nonetheless held accountable for their actions and found guilty of their crimes. Counsel is permitted wide latitude in closing argument, and limitation on argument is a matter for the court's discretion. *Morgan v. State*, 267 Ga. 203, 203-204 (1) (476 SE2d 747) (1996). It is permissible to use well known cases to illustrate a legal principle. *Stephens v. State*, 264 Ga. 761, 763 (6) (450 SE2d 192) (1994). Here the State attempted to illustrate the difference between the legal definition of insanity that precludes guilt,

and the common perceptions associated with the term.

*Judgments reversed. All the Justices concur, except Benham, C. J., Fletcher, P. J., and Hunstein, J., who concur specially, and Carley, J., who dissents.*

FLETCHER, Presiding Justice, concurring specially.

I concur in the judgment of the majority opinion; I write separately because I do not believe that the wide latitude allowed in closing argument encompasses irrelevant and prejudicial comparisons to infamous defendants.

This Court first allowed a prosecutor to refer to notorious crimes in closing arguments in *Forehand v. State.*[2] The four judges who joined that majority, however, gave no reason for the decision and simply stated "[w]e find no error," and the sole case cited for support did not involve a comparison to an infamous crime.[3] This Court has been loathe to reverse a conviction based on the state's comparison of the defendant to well-known criminals. This fact, however, is scant reason to continue a practice that injects wholly irrelevant and highly prejudicial matter into a trial that should be focused on the individual crime and defendant. As this Court observed over 100 years ago,

> [t]he rule of stare decisis is a wholesome one, but should not be used to sanctify and perpetuate error. . . . We deprecate and distrust rash innovation as much as the most conservative magistrates ought, but it has never been the doctrine of any court of last resort that the law is to be a refuge and safe asylum for all the errors that creep into it. . . . Courts, like individuals, but with more caution and deliberation, must sometimes reconsider what has been already carefully considered, and rectify their own mistakes. If this is to be done in any case, it would seem to be a case like the present. . . .[4]

Even under the cases cited by the majority, the references in this case were improper. The mention of notorious murderers is permissible only if there is an evidentiary basis for the illustration.[5] An obvious corollary to this rule is that the illustration must factually support the point the state is attempting to make. The district attorney justifies his comparison of the defendant to Charles Manson, David Berkowitz and Jeffrey Dahmer by noting the alleged similarities

---

[2] 235 Ga. 295 (219 SE2d 378) (1975).

[3] *Miller v. State*, 226 Ga. 730, 731 (5) (177 SE2d 253) (1970).

[4] *City of Atlanta v. First Presbyterian Church*, 86 Ga. 730, 732-733 (13 SE 252) (1891).

[5] *Carr v. State*, 267 Ga. 547, 555 (7) (a) (480 SE2d 583) (1997).

between these men and the defendant, including the reliance on insanity as a defense. Despite the public perception that the crimes of Manson, Berkowitz, and Dahmer were so heinous that each must be crazy, none of these defendants pled not guilty by reason of insanity as Hudson did. Manson did not use an insanity defense at his trial and Berkowitz pled guilty.[6] Dahmer did seek to prove his insanity, but only after pleading guilty to the crimes charged.[7] Because the reference to these murderers was irrelevant to the issue of the defendant's guilt and lacked any logical connection to Hudson or the crime charged, I conclude that the trial court also abused its discretion in overruling the objection to the prosecutor's argument.

I am authorized to state that Chief Justice Benham and Justice Hunstein join in this special concurrence.

CARLEY, Justice, dissenting.

In my opinion, the trial court did not abuse its broad discretion in restricting redirect examination as to the use of court funds to pay the defense's expert witness due to Hudson's indigency. Moreover, even if the trial court did abuse its discretion, I do not believe that the mere revelation to the jury that Hudson did not personally pay the expert selected by his attorney could have benefitted the defense in any way. Thus, any error was harmless.

Furthermore, I do not believe that the trial court erred in permitting the State to cross-examine, regarding competency to stand trial, the same expert who testified in support of Hudson's defense of insanity. See *Harris v. State*, 259 Ga. 511, 512 (1) (384 SE2d 647) (1989). Accordingly, I cannot join Divisions 2 or 4 of the majority opinion and I dissent to the reversal of the convictions.

DECIDED NOVEMBER 13, 2000.

*Culp & Smith, John C. Culp*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Anna E. Green, Assistant District Attorneys, Thurbert E. Baker, Attorney General, W. Swain Wood, Assistant Attorney General*, for appellee.

---

[6] Ira Mickenberg, *A Pleasant Surprise: The Guilty But Mentally Ill Verdict Has Both Succeeded in its Own Right and Successfully Preserved the Traditional Role of the Insanity Defense*, 55 U. Cinn. L. Rev. 943, 970 (1987); Lee Lescaze, *Berkowitz Pleads Guilty in 'Son of Sam' Murders*, The Washington Post, May 9, 1978, at A1.

[7] *Dahmer Changes Plea to Guilty but Insane*, The New York Times, Jan. 14, 1992, at A-19.