**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 22, 2021**

# In the Court of Appeals of Georgia

A20A1941. SCRIVEN v. THE STATE.

MERCIER, Judge.

A jury found Terrance Scriven guilty of aggravated assault, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon, and he was subsequently convicted. Following his convictions, Scriven filed a motion for new trial, which the trial court denied. He appeals, arguing that the trial court erred in charging the jury and by admitting his statement into evidence. He also claims that he received ineffective assistance of counsel at trial. Finding no basis for reversal, we affirm.

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. See *Morris v. State*, 308 Ga. 520 (1) (842 SE2d 45) (2020). On October 3, 2012, the victim was drinking outside a package store with a

group that included Scriven. The individuals in the group were making fun of each other, and the victim told the group, "you guys, been in and out . . . of prison . . . you may have a boyfriend up in there," and then called the group, including Scriven, a homophobic slur. Scriven walked to his vehicle and drove away.

After approximately 15 minutes, Scriven returned to the area and asked where the victim was, using a racist slur. The victim approached Scriven and said he was "right here." Scriven then pulled out a gun and demanded that the victim apologize. The victim "didn't want to say anything else to provoke him to pull the trigger" so he refused, "turned around and walked off[.]" As the victim was walking away, Scriven shot him in the left arm. The victim ran inside the store, and as he was running he heard a second shot, but he was not hit by the second bullet.

The victim was transported to the hospital, where he told the investigating deputy that Scriven had shot him. No weapons were recovered from the victim's person, and the victim testified that he did not have a weapon on his person at the time.

The deputy interviewed Scriven, and a video recording of the interview was played at trial. During the interview, Scriven stated that on the night in question, the victim and the group were sitting on a truck joking around when the victim called

2

everyone in the group homosexuals. The victim pulled out a knife, threatened to rape him, and pushed Scriven off of the truck. Scriven then walked away to get a gun he had observed a stranger put under a truck tire. Armed with the gun, Scriven walked back to the victim and told him he would give the victim until the count of three to apologize. The victim refused and began to run away, while still holding the knife. Scriven counted to two and fired the gun towards the victim twice, hitting the victim once.

1. Scriven claims that the trial court erred by refusing to give his requested justification jury instructions. "To authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge. Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law." *Reddick v. State*, 301 Ga. 90, 90 (1) (799 SE2d 754) (2017) (citation and punctuation omitted.)

Scriven contends that justification was his sole defense and the trial court erred by refusing to give the charge. However, "[a] charge on the defendant's sole defense is mandatory only if there is some evidence to support the charge. When a defendant raises the affirmative defense of justification, he must present evidence that he was justified in using deadly force. The burden then shifts to the State to disprove that

3

defense beyond a reasonable doubt." *Porter v. State*, 272 Ga. 533, 534 (3) (531 SE2d 97) (2000) (citations and punctuation omitted). As with the defendant in *Porter*, Scriven offered no evidence at trial. He relied solely on his custodial statement to carry his burden of production.

> A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's *imminent* use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

OCGA § 16-3-21 (a) (emphasis supplied).

In *Porter*, the victim and the defendant engaged in a physical fight in the backseat of a car, the victim attempted to run away from the scene and the defendant shot the fleeing unarmed victim. Supra at 533. The *Porter* defendant said in his statement that he was scared and that he believed that the victim had other guns. Id. at 534. The Supreme Court found that it was not error for the trial court to refuse to provide the self defense jury charge because "any imminent threat of harm which may

4

have occurred in the back seat of the vehicle had ended when both men emerged." Id. at 535 (3).

Similarly, while there was some evidence in this case that the victim had a knife and had made threatening comments to Scriven, Scriven admittedly left and returned to the scene armed with a gun, sought out the victim, demanded an apology, and counted to two before shooting the victim as the victim ran away. There was no imminent threat and thus no evidence that Scriven's actions were justified. The trial court did not err in refusing to charge the jury on justification. See id.; *Carter v. State*, 285 Ga. 565, 565-567 (2) (678 SE2d 909) (2009) (following a physical altercation between the victim and the defendant, victim was shot by defendant as he was running away; the jury charge of justification was not warranted even though the victim had previously threatened a third party and may have had a knife).

2. Scriven argues that the jury charges regarding circumstantial evidence were inconsistent and given in error. "A jury instruction must be adjusted to the evidence and embody a correct, applicable, and complete statement of law." *Morris*, supra at 529 (4) (citation and punctuation omitted).

> In reviewing a challenge to the trial court's jury charge, we view the charge as a whole to determine whether that court fully and fairly

5

instructed the jury on the law of the case. If the jury is charged in such a manner as to work no prejudice to the defendant, then this Court will not consider a challenge to the wording of isolated segments.

*Watkins v. State*, 265 Ga. App. 54, 54 (592 SE2d 868) (2004) (citation and punctuation omitted).

The trial court's first charge on circumstantial evidence followed the Georgia pattern jury charges. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2020), § 1.3.20. As to the second circumstantial evidence charge, the trial court stated that:

I charge you that aggravated assault and possession of a firearm during the commission of a crime may be shown by circumstantial evidence. In order to support a conviction, the evidence need not exclude every inference or hypothesis except the guilt of the accused, but only reasonable inferences and hypotheses, so as to justify the inference beyond a reasonable doubt of guilt.

This was not an incorrect statement of law. See *Jones v. State*, 299 Ga. 377, 379-380 (1) (b) (788 SE2d 477) (2016); *Smith v. State*, 309 Ga. App. 466, 468 (710 SE2d 654) (2011); OCGA § 24-14-6. While the verbiage in the second sentence may not be as clear as desired, jury charges must be read as a whole, and the jury was properly instructed as to how to interpret circumstantial evidence. Moreover, the

6

primary evidence against Scriven (the victim's testimony and Scriven's statement) was direct. See *Stubbs v. State*, 265 Ga. 883, 884-885 (2) (463 SE2d 686) (1995) ("[t]raditionally, the term 'direct evidence' pertains to the testimony of witnesses"). Scriven has offered no evidence that the jury was confused or misled by the circumstantial evidence instructions. As such, this enumeration of error fails. See generally *Morris*, supra at 530 (4); *Watkins v. State*, 265 Ga. App. 54, 57 (4) (592 SE2d 868) (2004) ("Even if an instruction is not as clear and precise as desired, it provides no basis for reversal absent danger of prejudice to the defendant") (citation and punctuation omitted).

3. Scriven claims that the trial court erred by admitting his statement into evidence because the trial court failed to determine whether he was mentally competent at the time of his statement. On review of the admissibility of a defendant's statement, the finding of a trial judge will not be overturned unless clearly erroneous. See *Nelms v. State*, 255 Ga. 473, 474 (1) (340 SE2d 1) (1986).

At the *Jackson-Denno* hearing, the deputy testified that he interviewed Scriven after advising him of his *Miranda* rights and that Scriven did not appear to be under the influence of alcohol or drugs. He also testified that he did not threaten or coerce Scriven, or make any promises in order to obtain a statement. A video recording of

7

the interview was played. Scriven testified at the hearing that at the time he gave his statement he was "tired" and that he had been woken up at five o'clock in the morning. Scriven stated: "I just was ready to get it over with, but I told him the truth about the incident." During the statement, Scriven stated that he had been diagnosed as bipolar and a paranoid schizophrenic, but that he was on his medication.

"A person who is mentally ill can be competent to make a voluntary confession." *Johnson v. State*, 256 Ga. 259, 260 (4) (347 SE2d 584) (1986). "Further, a mere showing that a person who confessed to a crime may have suffered from some mental disability is not a sufficient basis on which to exclude the statement." *Brooks v. State*, 271 Ga. 698, 699 (2) (b) (523 SE2d 866) (1999) (citation and punctuation omitted). Here, the deputy stated that he did not coerce Scriven or offer any inducements, the video of the statement was played and Scriven himself did not claim to be too mentally ill to give a voluntary confession. Instead he claimed that he did not understand his right to have a lawyer present because he "was so tired [he] was ready to get back to the bed." Considering the testimony of the deputy and Scriven, and following our review of the videotaped statement, we cannot find that the trial court clearly erred in concluding that Scriven was mentally competent when he incriminated himself. Therefore, admission of Scriven's statement was a proper

8

evidentiary ruling. See generally *Nelms*, supra at 474 (1); *Fuss v. State*, 271 Ga. 319, 320-321 (2) (519 SE2d 446) (1999).

4. Scriven claims that he received ineffective assistance of counsel. In order to succeed in his ineffective assistance of counsel claim, Scriven

> has the burden of proving both that the performance of his lawyer was professionally deficient and that he was prejudiced as a result. To prove deficient performance, [Scriven] must show that his trial counsel acted or failed to act in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms. To prove resulting prejudice, [Scriven] must show a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. In examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one.

*Morris*, supra at 530-531 (6) (citations and punctuation omitted).

(a) Scriven claims that his trial counsel was ineffective for failing to object to the deputy's opinion testimony about his statement. At both the *Jackson-Denno* hearing and the trial, the deputy who interviewed Scriven testified that based on his experience as a law enforcement officer, Scriven gave his statement freely and voluntarily.

9

The deputy also testified that he fully advised Scriven of his *Miranda* rights and that Scriven indicated he understood them, that Scriven did not request a lawyer or that questioning be stopped, and that no offer of benefit or threats were made to induce the statement. See *Owens v. State*, 161 Ga. App. 184 (288 SE2d 262) (1982) (admission of officer's testimony at trial that defendant's pretrial statement was given freely and voluntarily was not done in error where officer testified to the circumstances giving rise to the statement.) Further, the trial court instructed the jury that they were to determine for themselves whether Scriven's statement was freely and voluntarily given. As in *Owens*, the deputy testified to the circumstances which gave rise to the statement and since the facts were also presented to the members of the jury, they were able to draw their own conclusions. See id. As such, the testimony was not improper opinion testimony, and Scriven's trial counsel was not ineffective for failing to make a meritless objection. See *Owens*, supra; *Wesley v. State*, 286 Ga. 355, 356 (3) (a) (689 SE2d 280) (2010) ("failure to make a meritless objection cannot be evidence of ineffective assistance").

(b) Scriven contends that trial counsel was ineffective for not requesting a limiting instruction regarding Scriven's statement during the jury charge. Prior to Scriven's statement being played at trial, the trial court gave a limiting instruction

regarding other crimes that Scriven spoke about during his statement. However, Scriven contends that trial counsel should have requested that the limiting instruction be repeated during the jury charge.

During the charge conference, the trial court stated that it was not going to give a limiting instruction regarding Scriven's statement. Scriven's counsel had initially requested the charge and then stated that he would like to withdraw the request because he did not "want the jury to think that the State has proved any other wrongs[.]" Scriven has failed to meet his burden to show that trial counsel's decision was not a reasonable trial strategy or that such a request would have affected the outcome of the trial. See *Phillips v. State*, 285 Ga. 213, 220 (5) (c) (675 SE2d 1) (2009) ("Where trial counsel testifies that he chose not to seek a limiting instruction because he did not wish to draw attention to the prior convictions, the omission was trial strategy and not evidence of ineffective assistance of counsel.").

(c) Scriven contends that his trial counsel was ineffective for failing to request a limiting instruction after the victim testified that the members of the group drinking outside of the package store, including Scriven, had previously been imprisoned. Scriven's trial counsel testified that he did not object to the victim's statement

11

because he did not want to draw further attention to it, and the statement was part of the res gestae.

"It is well established that a witness' passing reference to a defendant's past criminal record . . . does not improperly place his character in issue." *Brown v. State*, 307 Ga. 24, 33 (6) (a) (834 SE2d 40) (2019) (citation and punctuation omitted). The passing reference by the victim that all of the members of the group had been in and out of prison did not amount to improper character evidence, and trial counsel's failure to request a limiting instruction does not amount to ineffective assistance of counsel. See generally id.

(d) Scriven argues that trial counsel was ineffective for failing to "adequately" research and prepare a mental health defense, particularly with respect to the admission of his statement to the police. Setting aside whether trial counsel should have requested a psychological evaluation of Scriven's mental state at the time of the statement, Scriven has failed to show that he was prejudiced in any way by the failure of his counsel to do so. See *Valentine v. State*, 293 Ga. 533, 537 (3) (748 SE2d 437) (2013). To establish prejudice, Scriven "must offer more than speculation." Id. (citation and punctuation omitted). But he has pointed to no expert testimony or other evidence showing what an evaluation would have revealed, or whether it would have

12

been favorable to the defense, had counsel requested one. See id. Scriven has not shown a reasonable probability that the result of his trial would have been any different if his counsel had pursued a mental health defense. See id.

(e) Scriven claims that he was not properly advised by his counsel regarding the consequences of being sentenced as a recidivist when he received the State's plea offer. Prior to the trial, the State filed notice to seek recidivist punishment. The day before trial, the State made a plea offer for 20 years with the first 15 years to serve in prison and the remaining 5 to serve on probation. The details of the plea offer were read into the trial record. Specifically, it was discussed that if Scriven did not accept the offer he was an "(a) and (c) recidivist, so he is looking at 30 years in prison day-to-day." Scriven's trial counsel stated that he had an opportunity to discuss the offer with Scriven and that Scriven still wished to proceed with trial.

At the hearing for the motion for new trial, Scriven's trial counsel testified that he did not "believe" that he explained the consequences of being sentenced as a recdivist to Scriven prior to trial, but that he was "not absolutely sure[.]" However, he normally would have gone over recidivist sentencing with his clients. Scriven testified at the hearing that his trial counsel did not explain recidivist sentencing and its impact on parole eligibility, and he claimed that if his counsel had explained it to

13

him, he would have accepted the plea offer. According to Scriven: "I never would have went to trial knowing that my punishment would have been without the possibility of parole."

Scriven's trial occurred in 2013. Under Georgia precedent, prior to 2015, "counsel was not required to advise a defendant of parole eligibility with regard to a plea agreement." *Swann v. State*, __ Ga. ___, (2) (b) (850 SE2d 137) (S20A0767) (decided October 19, 2020). Given the clear precedent at the time, "it was not professionally deficient for counsel to either fail to predict the future or to seek to create new law." Id. "As such, [Scriven]'s trial counsel cannot be held constitutionally ineffective for failing to do something he was not required to do at the time." Id.

(f) Finally, the cumulative prejudice from any assumed deficiencies is insufficient to show a reasonable probability that the results of the proceedings would have been different in the absence of the alleged deficiencies. The evidence against Scriven was considerable with respect to each of his convictions and included the victim's account, as well as Scriven's own statement. See generally *Brown*, supra at 36 (6) (i).

*Judgment affirmed. Miller, P. J., and Senior Judge Herbert E. Phipps., concur.*

14